## EZELL *v.* CITY OF ATLANTA.

An ordinance of the City of Atlanta requires the agents in charge of their business in the city, of all railroad companies, express companies, and all common carriers doing business in the city, on receipt of any spirituous or malt liquors, wines, or beers, in quantities in excess of three gallons, consigned to any person, firm, or corporation in the city, to "make out a list of same, place of shipment, name of consignee, and the quantity by cases or barrels, the contents as marked thereon," and to report the same to the police authorities of the city. *Held*, that such ordinance, in so far as it relates to interstate shipments of the iquors therein specified, is repugnant to the 15th section of the act of Congress, commonly known as the "interstate-commerce act," as amended June 18, 1910, and is therefore void and unenforceable.

JUNE 17, 1913.

Certified questions; from Court of Appeals (4158).

The City of Atlanta enacted the following ordinance:

"An ordinance requiring railway companies, express companies, and all common carriers to report the receipts of any and all spirituous or malt liquors in quantities in excess of three gallons, and to permit the Chief of Police, and his officers acting under his authority, to make an inspection of their books as to the receipts of such liquors, and for other purposes.

"Be it ordained by the Mayor and General Council of the City of Atlanta as follows:

"Sec. 1. That all railroad companies, express companies, and all common carriers doing business in the City of Atlanta shall, on receipt of any spirituous or malt liquors, wines, or beers, in quantities in excess of three gallons, on the day of the receipt of same or on the day following thereof, make out a list of same, place of shipment, name of consignee, and the quantity by cases or barrels, the contents as marked thereon.

"Sec. 2. That in the event any person, firm, or corporation shall have consigned to them, in three-gallon lots, more than one shipment in any one week, then a full report shall be made thereof in the same manner as provided for other shipments in Sec. 3135 of this ordinance.

"Sec. 3. That the books, bills of lading, way-bills, records, and other documents in the possession, custody, or control of railroad companies, express companies, and all common carriers, which show the receipt or delivery of any spirituous or malt liquors, wine, or beer, to or for any person residing in the City of Atlanta,

doing business in this city, shall be, at all times during the hours when their offices are open for business, subject to the inspection of the Chief of Police, or any member of the Department authorized by said Chief to inspect same: and said common carriers, their agents and employees, shall permit the Chief of Police or his authorized officers aforesaid to inspect such books, records, and documents fully and completely in so far as same refer or show delivery or receipt of any spirituous or malt liquors, wines, or beers to or for any person residing within the limits of the City of Atlanta.

"Sec. 4. The reports provided for in Section 1 of this ordinance shall be made by the agent of said common carrier in charge of its business in the City of Atlanta, and shall be made on a printed blank, which blank shall be furnished by the city free of charge, and the reports provided for shall be written or typewritten thereon neatly and legibly.

"Sec. 5. Any person, firm, or corporation, railroad company or express company, or common carrier, their officers, agents and employees, violating any of the provisions of this ordinance, or failing or refusing to furnish the reports provided hereunder, or failing or refusing to allow their books to be inspected as to the character of shipments herein designated, shall be deemed guilty of an offense against the peace and good order and general welfare of said city, and on conviction thereof in the Recorder's court shall be punished by a fine not exceeding two hundred dollars, and by a sentence to work on the public works of the City of Atlanta for not exceeding thirty days, either or both penalties to be inflicted in the discretion of the Recorder."

The plaintiff in error was tried before the recorder for the violation of the foregoing ordinance, and convicted. The following facts were agreed on by counsel for both parties. "Said accused, O. M. Ezell, is the agent of the Central of Georgia Railway Co., a common carrier engaged in commerce between the State of Georgia and other adjoining States. That on or about March 9, 1912, the City of Atlanta furnished printed blanks to said accused as agent of said common carrier, to make reports mentioned in said ordinance, and on March 19th, 1912, officer T. D. Shaw, a member of the police force of the City of Atlanta, demanded said reports from said O. M. Ezell, and he failed and refused to furnish the same in response to said demand. In the meantime said rail-

road company had received at its agency in Atlanta, of which agency the accused was the agent in charge, certain shipments of spirituous and intoxicating liquors of more than three gallons each, from points without the State of Georgia to Atlanta, Georgia, and made delivery of the same in the ordinary course. On the 19th of March, 1912, said officer Shaw, then a police officer of the City of Atlanta, with authority as above stated, demanded of said Ezell, in the City of Atlanta, that he make a report to him acting for the City of .Atlanta as described in Section 1 of said ordinance. At the time, said Shaw suspected that persons were .receiving shipments of spirituous liquors over the Central of Georgia Railway for the purpose of sale or illegal sale in the City of Atlanta; and while he did not have or specify any particular name of offender, he desired such information for the purpose of prosecuting such persons as he might ascertain had been guilty of such illegal traffic in spirituous liquors; and such information, if received, would have been used in the Recorder's court of the City of Atlanta in the prosecution of cases against such offenders if such information had been found pertinent. Said Recorder's court has jurisdiction not only of offenses against the ordinances of the City of Atlanta, but also has jurisdiction as a court of inquiry for the State of Georgia, with power to require a bond for the appearance of those for whom reasonable cause exists as to the violation of offenses against the State of Georgia for their appearance in either the City Court of Atlanta or the Superior Court of Fulton County to answer such crime."

Upon the foregoing facts the Court of Appeals certified the following questions:

"1. Is the said ordinance invalid or unenforceable against the plaintiff in error, as being an unlawful interference with and attempt to regulate interstate commerce?

"2. Is the said ordinance repugnant to the act of Congress, commonly known as the interstate-commerce act, as amended by the act of Congress passed June 18, 1910; and especially to that portion of the 15th section of said act of Congress, as follows: 'It shall be unlawful for any common carrier subject to the provisions of this act, or any officer, agent, or employee of such common carrier, or for any other person or corporation lawfully authorized by such common carrier to receive information therefrom, knowingly to disclose to

or permit to be acquired by any person or corporation other than the shipper or consignee, any information concerning the nature, kind, quantity, destination, consignee, or routing of any property tendered or delivered to such common carrier for interstate transportation, which information may be used to the detriment or prejudice of such shipper or consignee, or which may improperly disclose his business transactions to a competitor; and it shall also be unlawful for any person or corporation to solicit or knowingly receive any such information which may be so used: Provided, that nothing in this act shall be construed to prevent the giving of such information in response to any legal process issued under the authority of any State or Federal court, or to any officer or agent of the Government of the United States, or of any State or Territory, in the exercise of his powers, or to any officer or other duly authorized person seeking such information for the prosecution of persons charged with or suspected of crime; or information given by a common carrier to another carrier, or its duly authorized agent, for the purpose of adjusting mutual traffic accounts in the ordinary course of business of such carriers.'

"3. Is the said ordinance repugnant to section 20 of the above-mentioned act of Congress, by reason of the fact that in said act exclusive jurisdiction is conferred upon the Interstate Commerce Commission to prescribe the manner in which common carriers subject to said act shall keep their books and accounts?

"4. As applied to transactions of an intrastate nature in the State of Georgia, is said ordinance invalid because repugnant to section 2663 of the Civil Code of 1910, which confers upon the Railroad Commission of the State of Georgia exclusive jurisdiction to prescribe the methods in which common carriers are to carry on their intrastate business in the State of Georgia, in keeping their books and accounts?

"5. Had the City of Atlanta authority under its charter or under any law of the State to enact said ordinance?"

*Little & Powell,* for plaintiff in error.

*J. L. Mayson* and *W. D. Ellis Jr.,* contra.

FISH, C. J. We will first consider the second question, that is, whether the ordinance is repugnant to that portion of the 15th section of the interstate-commerce act, which is set forth in that question. That section of the act, in express terms, makes it un-

lawful for any common carrier subject to the provisions of the act, or any officer, agent, or employee of such common carrier, knowingly to disclose the very information which the ordinance requires that the agents of such common carriers, in charge of their business in the City of Atlanta, shall give to the police of the city; and the ordinance is therefore repugnant to the act, and for this reason void, unless the ordinance falls within the scope of the proviso of the act. Under the proviso the information sought to be obtained by the ordinance can only be given "in response to any legal process issued under the authority of any State or Federal court, or to any officer or agent of the Government of the United States, or of any State or Territory, in the exercise of his powers, or to any officer or other duly authorized person seeking such information for the prosecution of persons charged with or suspected of crime." The provisions of the ordinance requiring the information to be given are general and apply to every case of interstate shipment of liquors, and are not limited to any of the instances referred to in the proviso of the act. This is illustrated by the facts of this case, where an effort is made to enforce the ordinance in circumstances not within the proviso. The police officer who demanded the report from Ezell, as to certain interstate shipments of liquor, was not acting under any legal process issued under the authority of any State or Federal court, nor was he an officer or agent of the United States, or of any State or Territory, acting in the exercise of his powers, nor was he an officer or other duly authorized person seeking such information for the prosecution of persons charged with or suspected of crime. He had no warrant, no offense had been committed in his presence, he knew of no persons who had committed any offense against the State or the city; and therefore he was not acting, in demanding the report, as an arresting officer in the exercise of his powers to make arrests. No person had been charged with crime—in fact no particular person had been suspected of committing a crime. The officer merely suspected that if he obtained the information sought, he would then have reasonable grounds to suspect that some one had violated or would violate the prohibition law. The act of Congress under consideration does not give permission to common carriers engaged in interstate commerce, or their agents, to furnish information such as the ordinance seeks, as to interstate shipments, for the purpose of raising sus-

picion against some unidentified or unknown person or persons. But it permits such information to be given for the purpose of aiding the detection or prosecution of some particular person or persons already charged with or suspected of crime. It follows therefore that the answer to the second question must be in the affirmative.

Manifestly the ordinance is not aimed at intrastate shipments alone, or separately from interstate shipments. It is a single legislative scheme to cover all shipments, irrespective of their origin. Indeed, as the manufacture or sale of the liquors referred to in the ordinance is prohibited in this State, it seems that there would be few, if any, intrastate shipments. It appears from the agreed statement of facts that the only shipments involved in the case were interstate in character, and there is no intimation that there were any intrastate shipments at all. As we have held the ordinance to be void for the reasons above stated, it is unnecessary to pass on the question whether the requirements of the ordinance are, as to intrastate shipments, in conflict with the provisions of the Civil Code, § 2663, authorizing the Railroad Commission of the State to prescribe the methods in which common carriers shall keep their books and accounts. In view of what we have said, it becomes unnecessary to make specific answers to the other questions.

It was suggested in the brief of counsel for the city that, since this case arose, what is known as the "Webb act" has been passed by Congress. Whatever may be the extent or effect of that act— as to which we express no opinion, it has no effect upon the present case.                    *All the Justices concur.*