## 6705. KNIGHT *v.* GEORGIA SOUTHWESTERN & GULF RAILWAY CO.

PER CURIAM. 1. The dismissal of an action on demurrer to the petition' is a final judgment, and will support a writ of error.

2. Where a bill of exceptions recites the dismissal of an action on demurrer, and assigns error on the sustaining of the demurrer, and states that the plaintiff in error "presents this his bill of exceptions in order that the error complained of may be considered," a motion to dismiss the writ of error, on the ground that there is no exception to the final judgment, is not well taken.

3. Prior to May 1, 1916, it was not unlawful in Georgia for common carriers to transport and deliver intoxicating liquors, even in large quantities. It is the duty of a common carrier to accept and carry all lawful freight,—a duty which, even as to intoxicating liquors, as the law stood in 1914, could be enforced by mandamus or other appropriate proceedings. L. & N. R. Co. *v.* F. W. Cook Brewing Co., 223 U. S. 70 (32 Sup. Ct. 189, 56 L. ed. 355); Adams Express Company *v.* Kentucky, 238 U. S. 190 (35 Sup. Ct. 824, 59 L. ed. 1267). Hence, in 1914, for a railroad company to receive and transport intoxicating liquors, duly delivered to it and consigned to a person whose name appeared on the labels on the packages, did not entitle the consignee to maintain an action for libel against the railroad company, even though he had notified an agent of the company that his name was being improperly used in the shipments of liquor, and that the shipment of liquor in his name was against his express orders.

4. Though it is alleged that the railroad company knew that the whisky was not really consigned to the plaintiff, it is also alleged that the whisky was received by the railroad company as a freight shipment

addressed to one of that name in the city of Albany; and it then and there became the duty of the corporation, as a common carrier, to notify either by mail or personally, one of that name and address that such freight had been received. Until after a reasonable time expires after the arrival of freight, the railroad company is liable as a common carrier, but if the railroad company gives notice to one to whom the freight is addressed, the liability of the railroad company as a common carrier ceases, and that of a warehouseman begins. In any event it was the duty of the common carrier, under the rules of the railroad commission of Georgia, to give this notice. Rule 1-A of the storage rules of the railroad commission of Georgia is as follows: "Upon the arrival at destination of any and all freights, the delivering line shall, within twenty-four hours thereafter, give to consignees thereof legal notice of such arrival, and the giving of such legal notice as hereinafter defined shall be a condition precedent to the collection by railroad companies of any storage charges upon any shipment, notice of arrival of which has not been thus served upon the consignee, and no storage charges shall be assessed nor collected other than as authorized by these rules. For failure to give such legal notice of arrival the railroad company at fault shall, within thirty days after demand in writing is made therefor, pay to the consignee so offended the sum of one dollar per car per day on carload shipments, and one cent per hundred pounds per day on less than carload shipments, for each day during which the terms of this rule are not complied with." Rule 2 reads as follows: "Legal notice, as herein understood and intended, may be either served by mail or personally; and the leaving of notice at the consignee's residence, or usual place of doing business, shall also be considered personal notice. In case of carload shipments such notice must show the contents, point of origin, the initials and number or numbers of the car or cars containing the same, and if the shipment has been transferred en route, the initials and numbers of the car or cars in which originally shipped and from which transferred. In case of less than carload shipments such notice must show the point of origin, the character of the freight in question, the weight, and the amount of charges due thereon." It will be observed that in these rules a penalty is provided for failure on the part of the carrier to obey them, inuring to the benefit of the consignee; and it can not be held that the railroad company, in obeying the rules laid down by the railroad commission, as a public policy of the State, would subject itself to a suit of this character. This court holds that under these rules, though the railroad company had been notified through one of its agents that the plaintiff had not ordered any intoxicating liquors and would not receive any, it was the duty of the railroad company to address a notice by mail to one of the name in which the freight came, or to notify him personally; and for so doing it could not in any way be held liable in damages.

5. Libel can not be predicated of a true statement. Hence, where liquor has been received at a railroad depot, consigned to a named person, a simple statement of this fact is not actionable as libel, even though the liquor was wrongfully shipped to the named person. Whether a person

to whom liquor is shipped against his protest, and for the purpose of humiliating him or subjecting him to hatred, contempt, or ridicule, might have some other form of action is not involved in this case, under the pleadings; and therefore is not decided.

6. Notwithstanding it may be a violation of law for a common carrier to deliver intoxicating liquors to a person using an assumed or fictitious name, even if it be the true name of another person, and though the receipt for the shipment be signed in the assumed or fictitious name, it does not give a right of action for libel against the carrier to the person whose name is thus assumed.

7. Where one person, in order to obtain liquor consigned in the name of another, forges the name of the consignee to an order for the liquor, it is not actionable for the carrier to retain in its files the forged order, even though its files may be subject to the inspection of the company's employees, and even though the carrier knows the document is a forgery. The carrier would have the right to keep the forged order as evidence, or for any other lawful purpose. And to allow its employees to inspect the paper when necessary in the transaction of the company's business would not be a publication in such a sense as to render the company liable in an action for libel. There is no allegation in this case that the forged order was published otherwise; and there is no presumption that others saw it, in view of the statutory prohibition against such information being given out. See § 15 of the Interstate Commerce Act; *Ezell* v. *Atlanta,* 140 *Ga.* 197; s. c. 13 *Ga. App.* 95.

8. The court did not err in dismissing the action on demurrer.

*Judgment affirmed. Broyles, J., dissents.*

DECIDED MAY 24, 1916. ON REHEARING, SEPTEMBER 22, 1916.

Action for libel; from city court of Albany—Judge Clayton Jones. May 13, 1915.

*J. H. Pool,* for plaintiff.

*R. J. Bacon, R. H. Ferrill,* for defendant.

ON REHEARING.

PER CURIAM. After a careful consideration of the record in this case, the court adheres to its former judgment.

BROYLES, J., dissenting. The petition of the plaintiff, J. H. Knight, contained among others, the following allegations: "That defendant, by its custom of delivering whisky in the name of J. H. Knight, for the purpose of concealing the identity of the persons receiving it, and who were not receiving it in their own names, procured the shipment of two barrels of whisky through the public freight facilities, which whisky was delivered to the real consignee on a certain date, to wit, June 7, 1914. Said barrels were marked as containing whisky, and labelled to J. H. Knight, Albany, Ga." "Defendant knew, by reason of the knowledge of its authorized

agent, W. A. Sumpter, acting in his authorized position with defendant, that said custom existed to falsely deliver said whisky to the name of J. H. Knight; defendant also knew, for the same reason, that J. H. Knight had ordered defendant to cease making such deliveries in his name." "The label on said shipment of two barrels of whisky, which designated J. H. Knight as consignee, was a false and malicious label, being against the orders of the plaintiff, and being for the purpose of concealing the identity of the person to whom the shipment was made. Defendant knew, by reason of the knowledge of its authorized agent, W. A. Sumpter, acting within the scope of his authority, that said label was malicious, for what purpose the label was used, and that it was against the express order of J. H. Knight to so use his name. Said shipment through the public freight facilities of the two barrels of whisky, as described, created the impression upon the mind of the public that said plaintiff was engaged in the illicit traffic in whisky, thereby tending to injure his reputation, and exposing him to public hatred, contempt, and ridicule, each of which caused him to suffer great mental anguish." "On a certain date, to wit, June 7, 1914, defendant sent through the U. S. mail at Albany, Georgia, a U. S. postal card, addressed to J. H. Knight, notifying the addressee of a shipment of two barrels of whisky at defendant's depot. Said card was signed W. A. Sumpter, acting in his capacity as authorized agent of defendant. Defendant well knew, by reason of the knowledge of W. A. Sumpter, authorized agent of defendant, that said shipment was not intended for J. H. Knight, but was intended for a person of another name, who was using the name of J. H. Knight to conceal his identity, and for the same reason defendant knew that J. H. Knight had ordered his name not to be further used for shipments of whisky. Said card was sent to J. H. Knight, City, without more specific address thereon, which indefinite address required an examination of the contents of the card to determine to whom to deliver it; which examination necessarily disclosed the contents of the card. Said card, stating that two barrels of whisky were shipped to plaintiff, created the impression that plaintiff was engaged in the illegal traffic of whisky, and thereby tended to injure his reputation and expose him to public hatred, contempt, and ridicule; each causing plaintiff much mental anguish. On a certain date, to wit, June 7, 1914, defendant delivered to a public drayman and third person, two barrels of whisky,

marked in letters to be whisky, and labelled to J. H. Knight, purporting that J. H. Knight was the consignee. Said J. H. Knight was not the consignee, and said label purporting him so to be was false and malicious, being given to conceal the real consignee thereof. Said falsity of label and the purpose it was given for were known to defendant, by reason of the knowledge of defendant's authorized agent, W. A. Sumpter, who had previous orders from J. H. Knight not to permit the use of his name for the delivery of whisky. The delivery of the whisky, as described, created the impression that J. H. Knight was receiving the same for illegal traffic therein, which tended to injure his reputation and expose him to public hatred, contempt, and ridicule; each of which caused him great mental anguish."

The above allegations of the petition show that the action declared upon in one count was for *procuring* whisky to be shipped in the name of the plaintiff, with full knowledge that other persons with other names were fraudulently ordering it in the name of the plaintiff. It alleged in substance a conspiracy upon the part of the defendant carrier and third persons, by which the defendant was to deliver the whisky to a third person in the name of the plaintiff, the defendant to be rewarded by its freight charges, and the third person to receive the whisky; it being alleged that he (the third person) dared not take the risk of receiving it in his own name. It is alleged in the petition, again and again, that the whisky was intended for another person—of another name than the plaintiff, and that the defendant knew of this fact, and knew that the name of the plaintiff was being used to conceal the identity of the real consignee of the whisky. It is a crime for a common carrier to knowingly deliver whisky to a fictitious person or to any person under a fictitious name. Under the allegations of the petition, the commission of this crime was clearly shown, and therefore, in my opinion, the acts of the defendant should not be considered as privileged, and the defendant exempt for that reason from liability for libel or defamation of character; and while the defendant could be prosecuted criminally for a violation of the penal laws of the United States, in my opinion it is also liable to the plaintiff for damages in a civil suit. I think that the petition set forth a cause of action, and that the court erred in dismissing it on demurrer.