SANTA FÉ PAC. R. CO. et al. v. DAVIDSON et al.

(Circuit Court, S. D. California, S. D.   December 24, 1906.)

1. SEARCHES AND SEIZURES—WITNESSES—SUBPŒNA DUCES TECUM—PREVILEGE.

A subpœna duces tecum, directed to an officer of a railroad corporation, requiring him to appear before a federal grand jury and to bring with him certain records of the railroad company relating to freight claims, was not objectionable as violating federal Constitution, fourth amendment, protecting the people from unreasonable searches and seizures.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Searches and Seizures, § 5.]

2. SAME—REASONABLENESS.

A subpœna duces tecum requiring an officer of a railroad company to produce before a federal grand jury letters, papers, memoranda, and documents relating to certain claims designated by number, and all papers, documents, books, and memoranda showing the final disposition of the claims and the method by which they were paid or disposed of, etc., was not objectionable for unreasonableness.

T. J. Norton and E. W. Camp, for complainants.
Oscar Lawler, U. S. Atty., for defendants.

ROSS, Circuit Judge. This is a bill filed by the Santa Fé Pacific Railroad Company, a corporation organized under the laws of the United States, and the Atchison, Topeka & Santa Fé Railway Company, a corporation organized under the laws of the state of Kansas, against G. A. Davidson, auditor of the last-named company, and the United States attorney and the United States marshal for the Southern district of California, by which the complainants seek to enjoin the production before a United States grand jury of those certain tissue copybooks described in a subpœna duces tecum issued out of the United States District Court, in which the grand jury is impaneled, to

Davidson; directing him to appear before that body at a certain specified time, and bring with him—

"Those certain claims made upon and against the Atchison, Topeka & Santa Fé Railroad Company on account of freight paid to said railway company, together with all letters, papers, memoranda, and documents relating thereto, in your possession or under your control, not heretofore produced by you before said grand jury, either as an employé of the Atchison, Topeka & Santa Fé Railway Company or otherwise and bearing the following claim numbers, to wit: 87,480, 89,455, 91,175, 92,496, 95,110, 96,125, 96,238, 96,127, 98,857, 99,-474, 99,469, 99,472, 99,421, 100,677, 100,679, 101,121, 100,674, 100,668, 100,671, 102,843, 103,061, 104,744, 105,027, 104,887, 106,372, 106,369, 106,371, 106,363. Also bring with you any and all papers, documents, books, and memoranda, in your possession or under your control as such employé or otherwise, showing the final disposition of such claims and the method by which the same were paid or disposed of, and, particularly, those certain tissue impression copy books containing copies of vouchers made by you or by the office in which you are employed during the years 1904, 1905, and until August 1, 1906, in payment of each, every, and all of the claims made upon and against said railway company for refund of any freight paid. Also bring with you all those certain papers known as 'claim papers,' and all correspondence and memoranda relating to a certain loss and damage claim numbered 99,784, filed in the claim department of the audit office of said railway company, or if so in the Los Angeles local freight office of said Atchison, Topeka & Sante Fé Railway Company Coast Lines."

The bill shows that the complainants appeared before the District Court and moved that court to quash the subpœna in so far as concerns the tissue impression copybooks, and that the motion was denied.

Assuming, without holding, that this court of equity has the power to grant the injunction sought, are the complainants, as claimed, entitled to such injunction by reason of the provisions of the fourth amendment to the Constitution of the United States, which declares that "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized"?

In considering a similar question in the case of Hale v. Henkel, 201 U. S. 43, 73, 26 Sup. Ct. 370, 378 (50 L. Ed. 652), the Supreme Court said:

"We think it quite clear that the search and seizure clause of the fourth amendment was not intended to interfere with the power of courts to compel, through a subpœna duces tecum, the production upon a trial in court of documentary evidence. As remarked in Summers v. Mosely, 2 Cr. & M. 477, it would be 'utterly impossible to carry on the administration of justice' without this writ. The following authorities are conclusive upon this question: Amey v. Long, 9 East, 473; Bull v. Loveland, 10 Pick. (Mass.) 9; U. S. Express Co. v. Henderson, 69 Iowa, 40, 28 N. W. 426; Greenleaf on Evidence, 469a. If, whenever an officer or employé of a corporation were summoned before a grand jury as a witness, he could refuse to produce the books and documents of such corporation, upon the ground that they would incriminate the corporation itself, it would result in the failure of a large number of cases where the illegal combination was determinable only upon the examination of such papers. Conceding that the witness was an officer of the corporation under investigation, and that he was entitled to assert the rights of the corporation with respect to the production of its books and papers, we are of the opinion that there is a clear distinction in this particular between an individual and a corporation, and that the latter has no right to refuse to sub-

mit its books and papers for an examination at the suit of the state. The individual may stand upon his constitutional rights as a citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the state or to his neighbors to divulge his business, or to open his doors to an investigation, so far as it may tend to criminate him. He owes no such duty to the state, since he receives nothing therefrom beyond the protection of his life and property. His rights are such as existed by the law of the land long antecedent to the organization of the state, and can only be taken from him by due process of law and in accordance with the Constitution. Among his rights are a refusal to incriminate himself, and the immunity of himself and his property from arrest or seizure except under a warrant of the law. He owes nothing to the public so long as he does not trespass upon their rights. Upon the other hand, the corporation is a creature of the state. It is presumed to be incorporated for the benefit of the public. It receives certain special privileges and franchises, and holds them subject to the laws of the state and the limitations of its charter. Its powers are limited by law. It can make no contract not authorized by its charter. Its rights to act as a corporation are only preserved to it so long as it obeys the laws of its creation. There is a reserved right in the Legislature to investigate its contracts and find out whether it has exceeded its powers. It would be a strange anomaly to hold that a state, having chartered a corporation to make use of certain franchises, could not in the exercise of its sovereignty inquire how these franchises had been employed, and whether they had been abused, and demand the production of the corporate books and papers for that purpose. The defense amounts to this: That an officer of a corporation which is charged with a criminal violation of the statute may plead the criminality of such corporation as a refusal to produce its books. To state this proposition is to answer it. While an individual may lawfully refuse to answer incriminating questions unless protected by an immunity statute, it does not follow that a corporation, vested with special privileges and franchises, may refuse to show its hand when charged with an abuse of such privileges. It is true that the corporation in this case was chartered under the laws of New Jersey, and that it receives its franchise from the Legislature of that state; but such franchises, so far as they involve questions of interstate commerce, must also be exercised in subordination to the power of Congress to regulate such commerce, and in respect to this the general government may also assert a sovereign authority to ascertain whether such franchises have been exercised in a lawful manner, with a due regard to its own laws. Being subject to this dual sovereignty, the general government possesses the same right to see that its own laws are respected as the state would have with respect to the special franchises vested in it by the laws of the state. The powers of the general government in this particular in the vindication of its own laws are the same as if the corporation had been created by an act of Congress. It is not intended to intimate, however, that it has a general visitatorial power over state corporations."

The court in the case of Hale v. Henkel further held that a corporation is entitled to immunity under the fourth amendment against unreasonable searches and seizures, such as it found the subpœna there under review to be, saying, upon that point:

"Applying the test of reasonableness to the present case, we think the subpœna duces tecum is far too sweeping in its terms to be regarded as reasonable. It does not require the production of a single contract, or of contracts with a particular corporation, or a limited number of documents, but all understandings, contracts, or correspondence between the MacAndrews & Forbes Company, and no less than six different companies, as well as all reports made and accounts rendered by such companies from the date of the organization of the MacAndrews & Forbes Company, as well as all letters received by that company since its organization from more than a dozen different companies, situated in seven different states in the Union. If the writ had required the production of all the books, papers, and documents found in the office of the MacAndrews & Forbes Company, it would scarcely be more universal in its

operation, or more completely put a stop to the business of that company. Indeed, it is difficult to say how its business could be carried on after it had been denuded of this mass of material, which is not shown to be necessary in the prosecution of this case, and is clearly in violation of the general principle of law with regard to the particularity required in the description of documents necessary to a search warrant or subpœna. Doubtless many, if not all, of these documents may ultimately be required, but some necessity should be shown, either from an examination of the witnesses orally or from the known transactions of these companies with the other companies implicated, or some evidence of their materiality produced, to justify an order for the production of such a mass of papers. A general subpœna of this description is equally indefensible as a search warrant would be if couched in similar terms."

The requirements of the subpœna in the present case are manifestly very much more restricted than the one held unreasonable in Hale v. Henkel, and are no more unreasonable than those of the subpœna recently sustained by Judge Lacombe in United States v. American Tobacco Company (C. C.) 146 Fed. 557.

Without, therefore, deciding the question in respect to the power of this court to grant the injunction asked for, I am of the opinion that it should be, and accordingly it is, denied.