Indictment for refusing to allow an inspection of certain books containing a record of shipments and deliveries to consignees of intoxicating liquors in violation of Public Laws 1913, ch. 44, sec. 5.
It appeared that the defendant had such a book as the statute requires it to keep, and the relevant facts embodied in a special verdict and the proceedings thereon are as follows:
"We, the jurors sworn and impaneled in this case, return the following special verdict in this case, the defendant having agreed that a special verdict might be found:
"We find that R. L. Davis, on a date prior to the starting of this prosecution, he being at that time a citizen of the county of Wake, State of North Carolina, went to the office of the defendant company during its business hours and while said office was open, and demanded of the agent that he be allowed to inspect the book kept by the defendant showing shipments of liquor from points outside of the State of North Carolina to the city of Raleigh. *Page 358 
"We further find that the said Davis was not an officer.
"We further find that the agent of the defendant stated that he was instructed to and did refuse to allow the said Davis to make the inspection which he had requested and demanded.
"We further find that the said Davis had no legal process and did not make any demand under any legal process, and at the time of the alleged demand he was neither a State nor Federal officer of any kind of any State or Territory.
"We further find that at the time the said Davis made such demand he was seeking information from said book for the purpose of prosecuting persons suspected of violating the law of North Carolina.
"We further find that at the time said demand was made that said Davis was seeking general information as to shipments of whiskey (298) into the city of Raleigh from points in another State, and that he had in his mind specially an effort to see what evidence could be procured against one or more specific parties in the city of Raleigh, meaning by the words `general information' that he was seeking to ascertain who were the consignees of liquor and the quantities they were receiving, for the purpose of prosecuting such parties as may be charged or suspected with the violation of the prohibition laws of the State.
"We further find that the witness R. L. Davis, at the time he made a demand for an inspection of the book, had no authority except that which existed, if any, by virtue of the fact that he was at that time a citizen of the State.
"If upon the foregoing facts the court is of the opinion that the defendant is guilty, then we say for our verdict that the defendant is guilty; if upon said facts the court is of the opinion that the defendant is not guilty, then we find that the defendant is not guilty."
Upon the rendering of the foregoing special verdict the defendant Seaboard Air Line Railway moves for judgment of not guilty upon the special verdict, because the facts stated therein do not constitute a violation of the law, and upon the ground that the statute upon which the action is based is an attempted regulation of interstate commerce in violation of Article I, section 8, of the Constitution of the United States, and is unconstitutional and void, and for the reasons fully set out in the foregoing written motion to dismiss the action and for judgment of nonsuit.
Upon the foregoing special verdict the court adjudged that the defendant is not guilty. The State excepts.
And thereupon the jury for their verdict say the defendant Seaboard Air Line Railway is not guilty. *Page 359 
Motion by the State to set aside the verdict and for a new trial. Motion overruled, and the State excepts.
Whereupon it is considered and adjudged by the court that the defendant, the said Seaboard Air Line Railway, be discharged.
To the foregoing judgment the State again excepts and appeals to the Supreme Court.
Defendant also appealed in the case and assigned for errors the refusal of the court to quash the bill of indictment and to dismiss the action, these motions having been duly made in apt time and for reasons stated in the record.
It has now for some years "been the settled public policy of this State, approved by popular vote and enforced by general and many local statutes, that except in certain specified and (299) very restricted instances the manufacture and sale of intoxicating liquors shall not be allowed." Smith v. Express Co.,166 N.C. 155.
Acting, no doubt, under the conviction that where such a policy has been established as necessary to the peace and well ordered progress of communities the people are entitled to have the same upheld, and recognizing that its successful maintenance and efficient enforcement is seriously hindered and at times obstructed by reason of interstate shipments of whiskey, and because such shipments were withdrawn to a great extent from State regulation by the commerce clause of the Federal Constitution, Congress has, from time to time, enacted statutes designed to bring this subject, the sale, disposition, and use of intoxicating liquors, more and more under the police power of the States. Thus, in 1890, not long after the decision of the Supreme Court of the United States in Leisy v.Hardin, 135 U.S. 100, in which it was held that, notwithstanding the prohibition statutes of a State to the contrary, an importer could ship whiskey into the State and sell same in original packages, Congress passed a statute known as the Wilson law, to the effect that all fermented, distilled, or intoxicating liquors or liquids transported into any State or Territory or remaining therein for use, consumption, or storage, shall, on arrival in such State or Territory, be subject to the operation and effect of the laws of such State, etc., and shall not be exempt therefrom by reason of being introduced therein in original packages. This statute was upheld as a valid enactment in In re Rahrer, 140 U.S. 545, and in Rhodesv. Iowa, 170 U.S., *Page 360 
the terms "on arrival in such State or Territory" were construed to mean "when delivered to consignee in said State in continuous shipment from another State or Territory," the Court being of opinion, on perusal of the entire statute, that its purpose and meaning was to enable the States to prohibit sales in original packages after delivery to consignee.
In these and other cases on the subject clear intimation is given that Congress might, by additional legislation, further extend the police power of the State over the subject. Thus, in Rahrer's case Chief Justice Fuller, delivering the opinion, said: "No reason is perceived why, if Congress chooses to provide that certain designated subjects of interstate commerce shall be governed by a rule which divests them of that character at an earlier period of time than would otherwise be the case, it is not within its competency to do so." And, in Leisy v. Hardin, the Court, in referring to the case of Bowman v. R. R., 125 U.S. 507, in which it had been held that, under the laws then existent, interstate shipments of whiskey were excluded from State regulation by the commerce clause of the Federal Constitution until delivery in continuous transit to the consignee, said: "Up to that time we hold that, in the absence of congressional permissionto do so, the State had no power to interfere by seizure or any other action in prohibition of importation and sale by the foreigner or (300) nonresident importer," a statement given with approval in Rhodes v. Iowa, supra, 417.
In accord with these intimations, Congress, on 1 March, 1913, ch. 90, Federal Statutes, Anno. Supp., 1914, p. 208, passed the act known as the Webb-Kenyon law. It is entitled "An act divesting intoxicating liquors of their interstate character in certain cases," and provides, in general terms, that the shipment or transportation in any manner or by any means whatsoever of any spirituous, vinous, malted, fermented, or any intoxicating liquor of any kind from one State or Territory into another, etc., which said intoxicating liquor is intended by any person interested therein to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State or Territory, etc., is hereby prohibited.
We are not aware that the validity or interpretation of this statute has been directly presented for decision to the Supreme Court of the United States, but the question, in different phases, has been before several of our State courts and the lower Federal courts of recognized ability and learning, and there is a very general consensus of opinion, in which we fully concur, that the act is constitutional; that it classifies interstate shipments of intoxicating liquors into legal and illegal, withdrawing from the effect and operation of the commerce clause of the *Page 361 
Federal Constitution all such shipments into prohibition territory with intent to violate the laws thereof, and, in view of the better considered cases, that the illegal intent of any "person interested therein," made determinative by the law, is an intent on the part of the consignee or others interested in the "article" transported. Smith v. Express Co., 166 N.C. supra; concurring opinion of Chief Justice in S. v. Cardwell,166 N.C. 316; Adams Express Co., v. Commonwealth, 154 Ky. 462; Atkinson v.Express Co., 94 S.C. 444; S. v. Express Co., 145 N.W. 145 (Iowa); VanWinkle v. State (Del.), 91 A. 385; American Express Co. v. Beer (Miss.),65 So. 575; Ex parte Peede (Texas Crim. App.), 170 So. 749. And, having regard to the language of the law and the facts and circumstances attendant on its passage and throwing light on its meaning and purpose, including also the significance and history of precedent legislation, we are of opinion further that all such shipments made illegal by the Webb-Kenyon law are brought within the police power of the State when and as soon as they cross the State line, and are subject to such rules and regulations as are reasonably designed to make such power effective. This position is stated by Smith, C. J., delivering the opinion in Express Co. v. Beer, as follows: "The next statute of this character enacted by Congress was the one here under consideration, the Webb-Kenyon act, and a comparison of its language with that of the Wilson act will demonstrate that its draftsman intended to cure the defect in the Wilson act and (301) to make it unlawful to transport into a State from without intoxicating liquors intended by any person interested therein to be dealt with contrary to the laws of the State; in other words, to divest such intoxicating liquor altogether of its interstate character, and thereby permit the laws of the State into which it was being transported to operate upon it immediately upon its crossing the State line. . . ."
About the time the Webb-Kenyon law was enacted, and with the view of its successful passage, the Legislature of North Carolina enacted a statute entitled "An act to secure the enforcement of the laws against the sale and manufacture of intoxicating liquors," being chapter 44 of Public Laws of 1913, and popularly known as the search and seizure law, which, in section 1, prohibits the sale, exchange, or barter, etc., of such liquors, and section 2 prohibits the keeping such liquors in possession for the purposes of sale, and makes the following facts prima facie evidence of a violation of the second section:
"First. The possession of a license from the Government of the United States to sell or manufacture intoxicating liquors; or
"Second. The possession of more than 1 gallon of spirituous liquors at any one time, whether in one or more places; or *Page 362 
"Third. The possession of more than 3 gallons of vinous liquors at any one time, whether in one or more places; or
"Fourth. The possession of more than 5 gallons of malt liquors at any one time, whether in one or more places; or
"Fifth. The delivery to such person, firm, association, or corporation of more than 5 gallons of spirituous or vinous liquors, or more than 20 gallons of malt liquors within any four successive weeks, whether in one or more places; or
"Sixth. The possession of intoxicating liquors as samples to obtain orders thereon," etc.
After establishing certain methods of procedure for the enforcement of these sections, the act, among other things, and in section 5, makes provision as follows: "All express companies, railroad companies, or other transportation companies doing business in this State are required hereby to keep a separate book in which shall be entered immediately upon receipt thereof the name of the person to whom the liquor is shipped, the amount and kind received, and the date when received, the date when delivered, by whom delivered, and to whom delivered, after which record shall be a blank space, in which the consignee shall be required to sign his name, or, if he cannot write, shall make his mark in the presence of a witness, before such liquor is delivered to such consignee, and which said book shall be open for inspection to any officer citizen of the State, county, or municipality any time during business hours of the company, and said book shall (302) constitute prima facie evidence of the facts therein and will be admissible in any of the courts of this State. Any express company, railroad company, or other transportation company or any employee or agent of any express company, railway company, or other transportation company violating the provisions of this section shall be guilty of a misdemeanor. . . ."
There are facts in the special verdict showing that defendant, having kept the book as specified and required by the law, refused, during business hours, to permit R. L. Davis, at the time a citizen and resident of Wake County, N.C. to inspect such book, and that said Davis was seeking information from said book for the purpose of prosecuting persons suspected of violating the laws of North Carolina. This refusal is made a misdemeanor by the statute, and, on the record, there should be a conviction of defendant if this is a valid law. It has been so recognized with us inS. v. Wilkerson, 164 N.C. 431, and in S. v. Lee, 164 N.C. 533, and, on these and other authorities applicable, we are of opinion that the court below erred in directing that a verdict of not guilty should be entered. *Page 363 
It is chiefly urged against the validity of the statute and the attempted procedure under it that spirituous liquors, in certain instances, being still recognized as a legitimate subject of interstate commerce, is protected from such interference by the commerce clause of the Federal Constitution and authoritative decisions construing it, and that such protection continues until a given shipment is delivered to the consignee in a continuous course of transit, citing, among other cases, McNeil v. So.Ry., 202 U.S. 543; Leisy v. Hardin, 135 U.S. 100; Bowman v. R. R.,125 U.S. 465, and other cases.
Prior to the enactment of the Webb-Kenyon law this position might very well have been recognized as controlling; but it is an established principle that, when a statute contains a definite grant of power, it will be so construed as to authorize all things necessary to accomplish the expressed purpose of the grant. Dewey v. R. R., 142 N.C. at page 400, citing Sutherland on Statutory Construction, secs. 341-43, pp. 427 et seq. (erroneously printed in Dewey's case as p. 578), and Enlich on Interpretation of Statutes, sec. 418. And this statute, as we have endeavored to show, having made certain interstate shipments of intoxicating liquors illegal and brought the same within the police power of the State as soon as they come within its territory, should be held to confer upon the State authorities the right to make the rules and regulations required and reasonably designed to make such power effective. The Wilson act, as we have seen, brought these liquors under State control as soon as delivered to the consignee, and to hold, as defendant contends, that the Webb-Kenyon act did no more than this would be to deprive the written statute, enacted after full and extensive discussion and passed over a President's veto, of any and all significance. And to set aside a regulation of this character, intended and reasonably calculated to enable the State's officers and agents to ascertain (303) whether interstate shipments of whiskey are or are not within State control and subject to State regulation, would well-nigh render the statute of no practical value to the communities it was intended to benefit. The regulation now objected to puts no burden on interstate commerce, but is only a police regulation, reasonably designed to carry out the purpose of the statute and make effective the power referred to the State by reason of the Federal enactment, and comes well within the principle on which quarantine and inspection and other State and local laws and regulations are based and upheld, many of them stated with approval in the Minnesota rate cases, 230 U.S. pp. 352, 402, 406, 408; Mo. Pac. Ry.v. Lanabee Mills, 211 U.S. 612, 622, and other cases of like purport.
It is further contended not only that this State legislation invades a field exclusively referred by the Constitution to Federal regulation, but *Page 364 
that, on this particular subject, Congress has specially acted, and that this State legislation is in direct violation of the Federal statute intended to control the matter, and by which interstate carriers are prohibited from keeping any "accounts, records, or memoranda other than those prescribed by the Interstate Commerce Commission, sec. 20 of the Act to Regulate Commerce, ch. 104, sec. 20, Laws U.S., 1887, and amendments thereto in sec. 8592, 4 Compiled Statutes U.S., pp. 3872 and 3873.
If it be conceded that there is direct conflict between the State statute and the provision of the Federal law concerning this subject, and we are right in the position that, when Congress made certain interstate shipments of intoxicating liquor illegal and referred the regulation thereof to the police power of the States, it thereby granted the incidental right to make this power effective, in that case the Webb Kenyon law, being the later expression of the congressional will, might very well be construed to modify to that extent the former Federal laws and regulations on the subject. But, in fact, there is no conflict. Taking judicial notice of the regulations of the action of the Interstate Commerce Commission, which we are permitted to do, when the regulations of an important governmental department, made pursuant to a public statute and designed and intended to control the general public, have the force of a public law (S. v. R. R., 141 N.C. 846), we know that, pursuant to this public statute, the Interstate Commerce Commission have required interstate carriers to keep a standard and uniform set of books, showing the movements of traffic, and that it is done with a view to facilitate examination by official agents and to remove or minimize as far as possible the opportunity to discriminate among shippers, and there is nothing in this State Statute that in any way militates against the requirement or purpose of such a regulation. The book required by the State law is simply an excerpt from the books which the carrier is required by the (304) Commission to keep, and, recognizing this, the facts show that the defendant had actually kept the book in this instance. Being, as stated, only an extract from the carrier's general records, such a book is no burden on commerce, but only a reasonable police regulation, necessary to the effective regulation and control of a subject submitted to it by the Federal law.
We were referred on the argument to a Federal statute, 36 St. L., 553; 1 Fed. St. Anno. Supp., 1912, p. 122, 4 Compiled St., sec. 8583, subsec. 6, that which forbids disclosures as to interstate shipments without consent of the shipper, which may be used by competitors to the shipper's disadvantage. If it be assumed that this statute is otherwise relevant, the act itself contains the proviso: "That nothing in this act shall be *Page 365 
construed to prevent the giving of such information in response to any legal process issued under the authority of any State or Federal court or to any officer or agent of the United States or of any State or Territory in the exercise of his powers, or to any officer or other duly authorized person seeking such information for persons charged with or suspected of crime," etc.
The State statute provides that the book required to be kept shall be open to any officer or citizen of the State during business hours, and this constitutes any citizen an authorized agent of the State for the purpose indicated, bringing the applicant, in the present instance, R. L. Davis, directly within the intent and meaning of the proviso in the Federal law.
It is well understood that offenders against regulations of this character are insistent, enterprising, and elusive, and we see no reason why the State should not commit the duty to any of its citizens as being required to a proper enforcement of the law on the subject.
The matter having been referred to the police power of the State, the question of method must be left largely to the State's discretion — entirely so, unless the regulation should offend against some constitutional principle. The one in question here, as we have endeavored to show and owing to the Webb-Kenyon act, is not within the commerce clause of the Federal Constitution; no more is it inhibited by the fourteenth amendment, which has been repeatedly held not to impair the exercise of the police power (In re Converse, 137 U.S. 624; Barbier v. Connolly, 113 U.S. 27), and the provision constituting any citizen an authorized agent of the State for the enforcement of the law is not near so searching or stringent as many police regulations which have been approved by the courts. Patson v. Pa., 232 U.S. 138; Silz v. Hesterburg, 211 U.S. 31;Lawton v. Steele, 152 U.S. 133. This last upholding a law of New York which authorized any person to destroy fish nets set or maintained on the waters of the State in violation of the State statutes, a principle applied in our own State in Daniels v. Homer, 139 N.C. 219. There are also many decisions sustaining legislation by which the production and examination of books have been compelled and provided for. Interstate Commerce Commissionv. Baird, 194 U.S. 25; In re Chapman, 166 U.S. 661; (305)Santa Fe R. R. v. Davidson, 149 Fed., 603. And it will be noted further that the State statute, section 7, contains provision that no person testifying shall be prosecuted for any offense done or participated in by him, nor shall any discovery made by such witness be used against him in any penal or criminal action.
In this connection we were cited by counsel for defendant to the case ofEzell v. City of Atlanta, 140 Ga. 197, in which a municipal ordinance *Page 366 
of the city, requiring carriers, on receipt of spirituous liquors, etc., to make out a list and report same to the police authorities, was declared void by the Supreme Court of Georgia. This decision was made on the ground that the ordinance in question was an unwarranted interference with interstate commerce and in violation of section 20 of the Interstate Commerce Act and the amendments to the same. The requirements of the said ordinance are much more elaborate and exacting than the provision of the State statute which we are considering, and the same might be distinguished on the ground that the ordinance amounted to a burden on interstate commerce. The case, however, was presented on facts occurring before the passage of the Webb-Kenyon law, and the Court is careful to note that the effect of that law on the question was in no wise considered.
It was finally insisted that the State statute is in conflict with the Federal Criminal Code, secs. 238 and 239, on the ground that the first prohibits delivery of these shipments to any one but the consignee or on his written order, whereas the State law requires, in addition, that the name of the recipient shall be signed in the book, etc., and the second, in effect, forbids the shipment of whiskey c. o. d. But it will be observed that both of these provisions of the Federal Code are prohibitive in character and the subsequent Federal legislation, having made certain shipments of whiskey illegal and placed them under the police power of the State, including the right to make its control effective, there is nothing to prevent the State from making further regulations on the subject which do not conflict, but are in addition to the Federal requirements.
For the reasons stated and on the facts established, we are of opinion that the court below should have held the defendant guilty.
This will be certified, that a general verdict of guilty be entered below and the court proceed to judgment.
Reversed.
DEFENDANT'S APPEAL.