J. L. AND W. R. BRYAN v. LOUISVILLE AND NASHVILLE RAILROAD
COMPANY.

(Filed 3 October, 1917.)

1. **Carriers of Goods—Commerce—Bills of Lading—Live Stock—Written Notice—Waiver.**

   It is necessary to give the written notice of a claim for damages to an interstate shipment car-load of live stock to the proper carrier before the animals are removed at destination and commingled with others, in order to recover such damages, the stipulation in the bill of lading to that effect having been declared reasonable and valid by the Supreme Court of the United States, the decision of which, as to interstate carriage, being controlling upon the State courts; and a verbal notice to a clerk in the carrier's office is insufficient, and his acquiescence cannot be regarded as a waiver by the company.

**2. Same—Federal Statutes—Carmack Amendment—Interstate Commerce Commission.**

In order to obtain uniformity of carriage contracts for interstate commerce, the Carmack Amendment to the Interstate Commerce Act requires the carrier to issue a bill of lading upon terms fixed by the Interstate Commerce Commission; and while a parol contract of shipment is upheld as binding, the uniform contract yet fixes its terms.

**3. Carriers of Goods — Commerce — Uniform Bills of Lading — Parol Contracts.**

In an action against the carrier for damages to an interstate shipment of live stock, the carrier is obligated by law to furnish a proper car; and a parol agreement to this effect adds nothing to the carrier's duty in this regard.

**4. Same—Issues.**

A negative answer to an issue as to whether a damaged interstate shipment of live stock was made under the uniform bill of lading should be disregarded; and an alleged special parol contract of shipment, under which it is claimed that the written notice as to the damage was not required, should not be considered.

**5. Carriers of Goods—Federal Statutes—Bills of Lading—Live Stock—Damages—Written Notice—Cummins Amendment.**

The Cummins Amendment, approved March, 1915, restricting the right of the carrier to make certain stipulations in the bills of lading of interstate shipments, is not retroactive in effect, and has no application to a case wherein the shipment was made and the cause of action accrued theretofore.

ACTION tried before *Allen, J.,* at November Term, 1916, of WILSON, upon these issues:

1. Did the defendant, the Louisville and Nashville Railroad Company, agree with the plaintiff that it would furnish a car of sufficient size and strength to carry 26 head of horses and mules from East St. Louis, in the State of Illinois, to Wilson, in the State of North Carolina, safely and so that said horses and mules would not be crowded therein? Answer: Yes.

2. Did the defendant, the Louisville and Nashville Railroad Company, furnish to the plaintiff at East St. Louis, in the State of Illinois, a car within which to ship 26 head of horses and mules to Wilson, N. C., safely and so that said horses and mules would not be crowded therein? Answer: No.

3. Were the horses and mules of the plaintiff damaged and injured by reason of the defendant's, the Louisville and Nashville Railroad Company's, failure to comply with its contract in furnishing a car, as it contracted to do? Answer: Yes.

4. Did the plaintiffs give notice in writing of their claim for loss and injury to the animals to the agent of the Louisville and Nashville Rail-

road Company or to the agent of the Atlantic Coast Line Railroad Company before said animals were removed from the place of destination and before said animals were mingled with other animals? Answer: No.

5. Did the plaintiffs give verbal notice to the defendant, the Atlantic Coast Line Railroad Company, of their claim, before said animals were mingled with other animals? Answer: Yes.

6. Were the agents of the plaintiffs guilty of contributory negligence in loading the 26 animals in a 38-foot car, as alleged in the answer of the Louisville and Nashville Railroad Company? Answer: No.

7. Did the plaintiffs enter into the shippers' contract with the defendant, the Louisvile and Nashville Railroad Company, as alleged by the defendant? Answer: No.

8. What damages, if any, has the plaintiff sustained by reason of the defendant, the Louisville and Nashville Railroad Company, violating its contract with the plaintiff? Answer: $1,000 and interest from 23 October, 1912.

From the judgment rendered, the defendant, the Louisville and Nashville Railroad Company, appealed.

*H. G. Connor, Jr., and Robert W. Winston for plaintiff.*
*Murray Allen for defendant.*

BROWN, J. There are a large number of assignments of error, but we will consider only those directed to the stipulation in the bill of lading relating to notice, viz.: "As a condition precedent to the shipper's right to recover any damages for loss or injury to said animals, he will give notice in writing of his claim thereof to the agent of the railroad company or other carrier from whom he received said animals, before said animals are removed from the place of destination above mentioned, or from the place of delivery of the same to said shipper, and before said animals are mingled with other animals."

The jury have found that no *written* notice was served, but that verbal notice was given to the Atlantic Coast Line, the delivering carrier. There is evidence that verbal notice was given to a clerk in the Coast Line's office at Wilson. That the stipulation is reasonable and valid is settled by State and Federal authority. *Schloss v. R. R.,* 171 N. C., 350.

We are of opinion that the verbal notice to the clerk in the Coast Line office is not a compliance with the contract. It is stipulated that the notice shall be in *writing.* There are very obvious reasons why written notice should afford more protection to the carrier than mere verbal ntoice to some clerk in the office who may overlook it.

Our decisions have been to the contrary, but the Supreme Court of the United States has recently decided, in *St. Louis, I. M. & S. R. Co. v. Starbird,* 37 S. C. Rep., 462 (April 30, 1917), that "A stipulation in a through bill of lading for an interstate shipment of peaches that the carrier issuing the bill of lading shall not be held liable for damages unless a claim for damage is reported by the consignee, in *writing,* to the terminal carrier within thirty-six hours after the consignee has been notified of the arrival of the freight at the place of delivery, is valid and not unreasonable."

It is useless to quote fore from the opinion. The whole tenor of it indicates that the court regarded the stipulation that the notice must be in writing as an essential part of the contract, and that unless complied with, a recovery cannot be had.

This decision is binding upon us. To the same effect is a decision of the Supreme Court of Massachusetts, *Metz v. R. R.,* 116 N. E., 475, where *Rugg, C. J.,* says:

"The doctrine of waiver is not applicable to any subject where the public policy has been authoritatively declared to be contrary to waiver rights. Laws founded upon considerations of public policy cannot be evaded by the device of waiver. The absolute defense is allowed in such instances, not for the sake of the defendant, but because it is the established principle of the law."

If it is essential that the notice be in writing, then verbal notice to some clerk in the office cannot be regarded as a compliance with the contract, nor a waiver of the stipulation. But it is contended that the plaintiffs are not suing upon the bill of lading given him by the defendant, but upon an oral and distinct agreement made by defendant's agent to furnish them with a car of sufficient size and strength to carry 26 head of horses and mules from East St. Louis to Wilson.

The complaint of plaintiffs, after stating the terms of the contract, etc., declares: "And the said Louisville and Nashville Railroad Company issued to these plaintiffs its bill of lading, or contract of carriage, the original of which has been delivered to the defendant, the Atlantic Coast Line Railroad Company, but a copy of the same will be produced upon the trial of this action, if demanded."

There was but one contract, and that was to transport safely the 26 animals to Wilson. Under the terms of the bill of lading, as well as in performing its legal duty as a common carrier, the defendant was bound to furnish such car without any separate agreement to that effect. A special agreement to furnish a car sufficient in size and strength to transport the animals added nothing whatever to the obligation assumed by defendant. That was its plain duty, under the law, without any such agreement.

The finding of the jury that plaintiffs did not enter into the shipping contract was evidently in response to an erroneous charge of the court. No such issue should have been submitted. Plaintiffs allege that they entered into it, and in their complaint offer to produce it on the trial. It was produced and introduced in evidence. Such finding is merely surplusage and can have no effect.

But the true ground upon which the written bill of lading must be held to control the rights of the parties is founded on the Carmack Amendment to the Interstate Commerce Act. That amendment requires the carrier to issue a bill of lading, the terms of which are fixed by the Interstate Commerce Commission, whereby such contracts are made uniform through the United States. The defendant has no authority to enter into any other contract.

In the *Starbird case, supra,* the United States Supreme Court says: "Since the passage of the Carmack Amendment, the State court must be held to have known that interstate shipments were covered by a uniform Federal rule which required the isuance of a bill of lading, and that bill of lading contained the entire contract upon which the responsibilities of the parties rested. This is the result, not only of our own holdings, but is universally held in the State courts."

The Supreme Court of New Jersey, in *Thread Co. v. R. R.,* 95 Atlantic, 1002, speaking of this amendment, says: "The Carmack Amendment, which is part of section 20 of the Interstate Commerce Act, as amended by the Hepburn Act, June 29, 1906 (34 Stat. at L., 584, chap. 359), quoted in *Southern Express Co. v. Croninger,* 226 U. S., 491, requires the issue by carriers of a bill of lading. Under the act and the regulations made by the Interstate Commerce Commission pursuant thereto, defendant was required to submit and publish with its tariffs a uniform bill of lading."

How far the Cummins Amendment, approved 4 March, 1915, restricting the right of a carrier to make certain stipulations in the bill of lading, may affect this particular stipulation requiring written notice of damage, is not presented in this record. That amendment to the interstate commerce statutes is not retroactive, and can therefore have no effect upon the disposition of this case, as the shipment was made and cause of action accrued in October, 1912. *Starbird case,* 468; *N. Pac. Ry. v. Wall,* 241 U. S., 87. In the latter case it is said: "The act of March 4, 1915 (chap. 176, 38 Stat. 1196), altering the terms of the Carmack Amendment, is without present bearing, because passed long after the shipment was made."

This Court takes the same view of the Cummins Amendment in *Horse Exchange v. R. R.,* 171 N. C., 65, where the substance of the statute is given.

We are not unmindful of our own decisions in *Davis v. R. R.,* 172 N. C., 208, and *Smith v. R. R.,* 162 N. C., 143, in which it is held that it is not esential to a contract of shipment that the carrier issue a bill of lading. We still hold to the principle laid down in those cases to this extent, if a carrier receives goods for shipment in interstate commerce, and fails to issue the bill of lading prescribed by the Federal law, the carrier is nevertheless liable for the value of the goods and damage thereto to the same extent as if it had issued the bill of lading. The carrier could not be permitted to take advantage of its own negligence in failing to issue it.

But the contract of shipment would be just what is prescribed by Federal law, notwithstanding any oral agreement at variance with the bill of lading, for common carriers engaged in interstate commerce are prohibited from changing that contract or entering into any other, the object being to make all such contracts uniform throughout the United States.

Upon the pleadings and all the evidence, the court should have sustained the motion to nonsuit.

Let the judgment be entered accordingly.

Reversed.