A. B. SCHROADER, Trading and Doing Business as SCHROADER POUL-
TRY FARMS, v. RAILWAY EXPRESS AGENCY, INC.

(Filed 8 April, 1953.)

1. Courts § 12—

In interstate commerce, the contract between the shipper and carrier
consonant with the Federal statutes, or valid regulations of the Interstate
Commerce Commission, attach and govern the rights of the parties con-
cerning the shipment.

2. Carriers § 9—

A shipper's prepaid receipt for a shipment in interstate commerce is a
bill of lading.

3. Evidence § 4—

Our courts take judicial notice of the regulations of the Interstate Com-
merce Commission.

4. Carriers § 11—

Under the provisions of U.S.C.A., Title 49, sec. 20, the liability of a car-
rier for loss of or damage to a shipment of chicks in interstate commerce,
when the shipper does not declare a greater valuation, is limited to $50.00
or to 50c per pound for shipments in excess of 100 pounds, and therefore
when there is no evidence that the shipper declared a greater valuation, an
instruction on the issue of damages to the effect that the damages would
be the fair market value of the chicks at the time of their delivery to the
carrier, is reversible error.

5. Same—

A shipment of chicks is not "ordinary livestock" within meaning of
Interstate Commerce Act, 49 U.S.C.A. §20 (11).

APPEAL by defendant from Phillips, J., at November Term, 1952, of
HENDERSON.

This is a civil action to recover damages for deaths and injuries to
chicks transported by the defendant, a common carrier, for the plaintiff
from Hendersonville, North Carolina, to J. D. Jewell, Inc., Gainesville,
Georgia.

The plaintiff is in the hatchery business. On 23 July 1951, he deliv-
ered 24 bundles containing 4,900 chicks, weight 588 pounds, to the defend-
ant consigned to J. D. Jewell, Inc., Gainesville, Georgia. The plaintiff
testified the value of the chicks was $13.00 per hundred. The chicks were
placed in standard summer size boxes, and when received by the defend-
ant were in as perfect condition as chicks can be. They were delivered
to the defendant between 9:00 and 12:00 o'clock, as they were to leave on
the 12:00 o'clock train. When the plaintiff paid the defendant for trans-
porting said chicks, he received a Shipper's Prepaid Receipt. There was
posted at that time in the defendant's office the tariff rates and regula-

tions of the Interstate Commerce Commission. The plaintiff did not declare the value of the shipment, but paid the express charges the defendant demanded. The defendant introduced in evidence the Shipper's Prepaid Receipt, the pertinent part of which reads as follows: "Note—the company will not pay over $50.00 in case of loss, or 50c per pound, actual weight, for any shipment in excess of 100 pounds, unless a greater value is declared and charges for such greater value paid." This receipt shows that the plaintiff did not declare any greater value, nor pay for any greater value than the basic uniform receipt. The plaintiff on cross-examination testified he did not know if this receipt was the original of which he was given copy, because his signature was not on it, but it was the proper quantity and the proper date. He further said he paid what the agent required. The defendant's agent at Hendersonville testified that the receipt introduced in evidence was the original receipt given to the plaintiff, and returned by plaintiff with his claim for damages. When the plaintiff returned the receipt, the top was torn off.

It is about 160 to 175 miles by railroad from Hendersonville, North Carolina, to Gainesville, Georgia. The report of loss showed the chicks reached Gainesville about 24 hours after they were shipped. Chicks will live in these boxes about 72 hours in good health. Upon arrival at Gainesville about one-fourth of the chicks were dead, and the consignee refused to accept them. The defendant through its agent at Gainesville notified the plaintiff by telegram "chicks for Jewell refused account of condition, advise disposition." The plaintiff notified the defendant what to do with the chicks by wire. The plaintiff filed a claim for loss with the defendant for $735.00. The plaintiff received by mail from the defendant a joint inspection report stating among other things the chicks will be sold. The plaintiff has not received back any of the chicks, nor has the defendant paid him anything, though it "offered to pay."

The jury found by its answer to the issues submitted to it that the defendant contracted with the plaintiff to transport by express these chicks from Hendersonville, North Carolina, to the consignee in Gainesville, Georgia; that said shipment was damaged by the negligence of the defendant in transit, and awarded damages in the amount of $637.00.

The Shipper's Prepaid Receipt introduced in evidence is as follows:

"Shipper's Prepaid Receipt—To Destination Office, Gainesville, Georgia.

| | |
|---|---|
| Consignee | Enter Date Shipped |
| J. D. Jewell, Inc. | July 23, 1951. |
| Street Address or | Receipt Number |
| Non-Agency Destination | 85-25-23 |

SCHROADER *v.* EXPRESS AGENCY.

............ ..................... ... Name of Forwarding Office .....................................

(1443-L)   Hendersonville,        Declared        Value
           N. C.        (S)        Value          Charges

Piece-s    Article Description  Weight                   20
24 bdls. of chickens (49                           Express Charges
    boxes) ...........................................................................   27    28
                                                   Tax
                                                          82
                                                   Total
                                                          28    30

Shipper
Schroaders Poultry    Class:    Paid:    Beyond
Farm                                                    C. O. D.
Shipper's Street               Prepaid:   Scale:    Verified
Address                                     or         by
                              (Original)  Rate

Shipper's Prepaid                     C. O. D. Service Charge
     Receipt                          Write in Yes or No

Note—The Company will not pay over
$50, in case of loss, or 50 cents per pound,          (Form 5088)
actual weight, for any shipment in excess
of 100 pounds, unless a greater value is
declared and charges for such greater
value paid.
          Railway Express Agency
............ ..... ............ .Incorporated...... ..... ... ................................................

Received shipment described hereon, subject to the Classifications and
Tariffs in effect on the date hereof, value herein declared by Shipper to
be that entered in space hereon reading 'Declared Value,' which the Com-
pany agrees to carry upon the terms and conditions printed hereon, to
which the Shipper agrees and as evidence thereof accepts this Receipt.

                                      Number Pieces     Hour
          Steve                            24          11 AM

               For the Company."

    From the judgment on the verdict in favor of the plaintiff, the defend-
ant excepted and appealed, assigning errors.

*Paul K. Barnwell for plaintiff, appellee.*
*L. B. Prince for defendant, appellant.*

PARKER, J.: The defendant assigns as Error No. 4 all of the court's charge on the third issue of damages. On this issue the court charged as follows: "Now, as to damages for livestock the Court instructs you as follows: Where the livestock is retained by the defendant, then the Court instructs you that the measure of damage would be the reasonable or fair market value of such livestock at the time they were shipped." Then the court summed up the contentions of the plaintiff in 11 lines, which in substance was that the fair market value of the livestock was $13.00 a hundred, that he shipped 4,900 chicks, that that would amount to $637.00, and such should be your answer to the third issue. Then the court in 10 lines stated what he called contentions for the defendant substantially as follows: That the jury should not be bound by the plaintiff's estimate of the fair market value of the chicks, that they were worth less than the plaintiff testified and that plaintiff's claim was exorbitant. Then the court defined fair market value, and concluded its charge as follows: "Now, what the amount is the plaintiff has satisfied you, if you answer the second issue Yes, the amount that the plaintiff has satisfied you from the evidence, and the greater weight thereof, that the fair and reasonable market value of the chicks was at the time they were received by the defendant would be your answer to the third issue."

There is no evidence as to what the defendant did with the chicks. In its charge on the third issue, the court did not refer to the limit of liability set forth in the Shipper's Prepaid Receipt, of 50c per pound on the 588 pounds of chicks totaling $294.00, unless a greater value is declared and a greater value paid by the plaintiff to the defendant for the shipment. There is no evidence that the plaintiff declared a greater value and paid a greater value for this shipment to the defendant.

This was an interstate shipment of chicks. The requisite stipulations of the contract between the plaintiff and the defendant as prescribed by the Federal Statutes, or valid Regulations of the Interstate Commerce Commission, attach and govern the rights of the parties concerning the shipment. *R. R. v. Mugg,* 202 U.S. 242, 50 L. Ed. 1011; *Peanut Co. v. R. R.,* 166 N.C. 62, 82 S.E. 1; *Bryan v. R. R.,* 174 N.C. 177, 93 S.E. 750; *McRary v. R. R.,* 174 N.C. 563, 94 S.E. 107; *Aman v. R. R.,* 179 N.C. 310, 102 S.E. 392.

The defendant, when it received this shipment, was required to issue to plaintiff a receipt or bill of lading therefor. U.S.C.A., Title 49, Transportation, Sec. 20, Par. (11). "A bill of lading is said to be both a contract and a receipt. It is a receipt for the goods shipped, and a contract to transport and deliver the same as therein stipulated." *Griggs v. York-Shipley, Inc.,* 229 N.C. 572, 50 S.E. 2d 914.

The defendant issued to the plaintiff a Shipper's Prepaid Receipt for the chicks and an agreement to carry them from Hendersonville, North Carolina, to Gainesville, Georgia, 23 July 1951. This receipt is a bill of lading. *Aman v. R. R., supra.* The relationship may be created without any written bill of lading. In case of interstate shipments, if there is no written bill of lading, the contract as prescribed by the Federal Statutes or valid Regulations of the Interstate Commerce Commission will attach and govern the rights of the parties. *McRary v. R. R., supra.*

U.S.C.A., Title 49, Transportation, Sec. 20, Par. (11), providing that the provisions of said section respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability shall be void, do not apply to property, except ordinary livestock, received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper, in which case such declaration shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared, and shall not, so far as it relates to values, be held to be a violation of Sec. (10) of this title; and any tariff schedule which may be filed with the Commission pursuant to such order shall contain specific reference thereto and may establish rates varying with the value so declared and agreed upon; and the Commission is empowered to make such order in cases where rates dependent upon and varying with declared or agreed values would, in its opinion, be just and reasonable under the circumstances and conditions, surrounding the transportation. The said section of the above statute provides that "the term 'ordinary livestock' shall include all cattle, swine, sheep, goats, horses, and mules, except such as are chiefly valuable for breeding, racing, show purposes, or other special uses."

We take judicial notice of the Regulations of the Interstate Commerce Commission. *S. v. R. R.,* 169 N.C. 295, 84 S.E. 283; Stansbury's N. C. Evidence, Sec. 12.

The material parts of the Official Express Classification No. 34 I. C. C. No. 7600, Rule 13 Valuation Charges, which were in force and effect when this shipment was made, are in substance as follows: Rates named in tariffs governed by this Classification, except as to ordinary livestock, are dependent upon and vary with the declared or released value of the property, and, except as to articles provided for in Rule 13 (b)—which does not apply to live property—and except as to live animals, livestock and other live creatures provided for in Rule 13 (c), are based upon property declared to be of, or released to, a value not exceeding $50.00 for any shipment of 100 pounds or less, or not exceeding 50c per pound actual weight for any shipment in excess of 100 pounds. When the

declared or released value exceeds that above stated, the charges are 11c greater for each $100.00 or fraction thereof in excess of the value stated above. Rates applicable to livestock (cattle, swine, sheep, goats, horses and mules) chiefly valuable for breeding, racing, show purposes, or other special uses, other live animals named herein, live birds, live pigeons, live poultry, reptiles and wild animals not named herein, are based upon the following maximum values: Birds, when not to exceed (10) such birds, comprise one shipment, maximum value $5.00. When more than (10) such birds comprise one shipment, the maximum value per shipment will be $50.00 if weight is 100 pounds or less, or 50c per pound actual weight, if weight is in excess of 100 pounds, but the maximum value so ascertained may not exceed $5.00 per bird. In this Classification the maximum value is set forth for many different kinds of livestock, for instance: Bulls $100.00; Dogs $50.00; Goats, hogs, sheep $25.00; Cows, oxen and steers $75.00; Horses and mules $200.00. The rule further provides when the declared value exceeds the maximum value stated, the express charges will be increased as set forth in this rule.

Webster's New International Dictionary defines birds as: The young of a feathered vertebrate (a bird in sense 2), as a chick, eaglet, duckling; a nestling. Manifestly, this shipment of chicks was not "ordinary livestock" as particularly set forth in U.S.C.A., Title 49, Transportation, Sec. 20, Par. (11), as contended for by the plaintiff.

The plaintiff is bound by the terms of the Shipper's Prepaid Receipt though he did not sign it, and the said receipt became the written agreement of the parties. *American Railway Express Co. v. Lindenburg,* 260 U.S. 584, 67 L. Ed. 414. In that case it is said: "The receipt which was accepted showed that the charge made was based upon a valuation of $50.00 unless a greater value should be stated therein. The knowledge of the shipper that the rate was based upon the value is to be presumed from the terms of the bill of lading and of the published schedules filed with the Commission (citing authorities). Having accepted the benefit of the lower rate dependent upon the specified valuation, the respondent is estopped from asserting a higher value. To allow him to do so would be to violate the plainest principles of fair dealing (citing authorities). In *Kansas City Southern R. Co. v. Carl, supra,* this Court said: 'To permit such a declared valuation to be overthrown by evidence *aliunde* the contract, for the purpose of enabling the shipper to obtain a recovery in a suit for loss or damage in excess of the maximum valuation thus fixed, would both encourage and reward under valuations, and bring about preferences and discriminations forbidden by the law. Such a result would neither be just nor conducive to sound morals or wise policies.'" See also *American Railway Express Co. v. Daniel,* 269 U.S. 40, 70 L. Ed.

154, and *Southeastern Express Co. v. Pastime Amusement Co.,* 299 U.S. 28, 81 L. Ed. 20, to the same effect.

The Court said in *American Railway Express Co. v. Levee,* 263 U.S. 19, 68 L. Ed. 140: "Coming to the merits, the limitation of liability was valid, whatever may be the law of the state in cases within its control (citing authorities). The effect of the stipulation could not have been escaped by suing in trover, and laying the failure to deliver as a conversion, if that had been done (citing authorities). No more can it be escaped by a state law or decision that a failure to deliver shall establish a conversion unless explained. The law of the United States cannot be evaded by the forms of local practice."

On the third issue, "What amount of damages, if any, is the plaintiff entitled to recover of the defendant?" the court should have charged the jury that the Shipper's Prepaid Receipt is the contract between the plaintiff and the defendant for the transportation by express by the defendant of the chicks from Hendersonville, North Carolina, to Gainesville, Georgia; and as there is no evidence that the plaintiff declared a greater value and paid a greater value for such shipment, the limitation of liability in the Shipper's Prepaid Receipt is binding upon the plaintiff and that if the jury awarded damages to the plaintiff in no event could they award damages in excess of 50c per pound, actual weight, for such shipment. All the evidence tends to show that the actual weight of the shipment was 588 pounds.

The court's charge on the issue of damages is error and the defendant's assignment of Error No. 4 is sustained.

The other assignments of errors are not considered, as they may not arise in the retrial of this case.

For error in the charge as indicated a new trial is necessary. It is so ordered.

New trial.