The Western Union Telegraph Company v. Edwin A. Austin.

No. 12,992.   (72 Pac. 850.)

SYLLABUS BY THE COURT.

1. Telegraph Companies—*Acts of 1898 Construed.*   Chapter 38, Laws of 1898, extending the power, jurisdiction and control of the court of visitation over the telegraph companies and telegraphic service within the state, is *in pari materia* with chapter 28, Laws of 1898, which created the court of visitation and attempted to extend its power, jurisdiction and control over the railways of the state, and must be construed in connection with that act the same as though the two chapters constituted but one act.

2. Constitutional Law — *Statutory Construction.*   When parts of a legislative act have been declared unconstitutional and void and the invalidity of the remaining parts is suggested, the general rule that all reasonable presumptions must be indulged in favor of the constitutionality of an act does not obtain.   In such case it must be clear that it was the legislative intent that the remaining parts should stand as the law, independent of, and uncontrolled by, those provisions opposed to the constitution.

3. ———— *Telegraph Regulation—Act of 1898 Unconstitutional.* Section 7, chapter 38, Laws of 1898, which provides a forfeiture for failure, neglect or refusal of a telegraph company to receive, transmit and deliver, without unnecessary delay, any telegraphic message tendered under the provisions of that act, considered, and held inoperative and void.

Error from Shawnee district court; Z. T. Hazen, judge.   Opinion filed June 6, 1903.   Reversed.

*Rossington, Smith & Histed,* and *George H. Fearons,* for plaintiff in error.

*Austin & Hungate, E. D. McKeever, A. C. Markley,* and *Stebbins & Evans,* for defendant in error.

The opinion of the court was delivered by

Pollock, J. :   The legislature of the state, convened by the governor in extra session, in 1898 created the court of visitation, and by chapter 28 of the laws of

that session attempted to confer on that body the exercise of administrative, legislative and judicial powers, and jurisdiction over the railways of the state. By chapter 38, Laws of 1898, the same jurisdiction conferred on the court of visitation over railway companies was extended over the telegraph companies of the state.   Section 1 of that act reads:

"That from and after the taking effect of this act the court of visitation shall have the same power, jurisdiction and control over all questions concerning the regulation of the telegraph service in this state, the reasonableness of charges herein fixed or to be fixed by any order of said court, and in all matters concerning the regulation, management or control of telegraph companies, as is conferred upon said court of visitation in reference to railroads or railway corporations in this state."

Section 2 of the act fixes the rates to be charged for the transmission and delivery of messages:

"That no person, company or corporation owning or operating any telegraph line in this state shall demand, charge, or receive, directly or indirectly, a rate in excess of fifteen cents for the first ten words (exclusive of address and one signature), and one cent for each additional word, for transmitting any message between points within this state.   And no such person, company or corporation shall demand, charge, or receive, for any distance between points within this state, more than one-third of one cent for each word for messages of over ten words received between the hours of six o'clock A. M. and six o'clock P. M., and one-sixth of one cent per word for messages received between the hours of six o'clock P. M. and six o'clock A. M. to be transmitted as special reports for newspapers."

Section 7 makes provision for a forfeiture and its collection for the failure, neglect or refusal to receive,

14—67 KAN.

transmit, or deliver, without unnecessary delay, any message under the terms of the act:

"Any person, company or corporation engaged in the business of receiving and transmitting telegraphic messages within the state refusing, failing or neglecting to receive (either from the person sending the same or any connecting line), transmit, and deliver, without unnecessary delay, any message offered for transmission, after the legal charges under this act for transmission and delivery have been paid or tendered, or refusing, failing or neglecting to transmit and deliver, without unnecessary delay, any message received for transmission and delivery, either from the person sending the same or any connecting line, shall forfeit and be liable to the person sending or trying to send such message and to the person to whom the same was sent or directed, in the sum of $100 each, as damages, to be recovered in a civil action by each of said parties in any court of competent jurisdiction, together with a reasonable attorney's fee in each court into which said action may be taken, by appeal or otherwise. This section shall not in any manner affect the rights of such persons to recover actual damages for failure to send or deliver such message, in addition to the forfeiture herein provided for."

Section 8 of the act makes the violation of any of the provisions of the act criminal:

"Any person, company, or corporation, or any agent, servant or employee of any person, company, or corporation, violating any of the provisions of this act, shall be deemed guilty of a misdemeanor, and upon conviction be punished by a fine of not less than fifty dollars nor more than five hundred dollars, and imprisonment in the county jail not less than thirty days nor more than one year."

This action was brought by Edwin A. Austin against the Western Union Telegraph Company to recover the statutory penalty, or forfeiture, of $100 and attorney's fees, provided for by the terms of section 7 of

the act for failure of the company to deliver, without unnecessary delay, a message sent by him to one Markley from Topeka to Lyndon, Kan., on the 8th day of November, 1899.   At the trial there was judgment for plaintiff for the statutory forfeiture of $100 and attorney's fees, as provided in the act. · The telegraph company brings error.

The question presented for our consideration and determination is the validity of that section of the act making provision for a forfeiture and its collection.   This court, in the case of *The State v. Johnson*, 61 Kan. 803, 60 Pac. 1068, 49 L. R. A. 662, held chapter 28, Laws of 1898, unconstitutional and void, for the reason that it constituted an attempt on the part of the legislature to confer on one body the power and jurisdiction to exercise administrative, legislative and judicial functions in violation of the fundamental principles of our government.   Upon the authority of that case, and by the same process of reasoning there employed, it must be held that chapter 38, Laws of 1898, is unconstitutional and void in so far as it attempts to confer like jurisdiction and power over the telegraphs of the state.   Thus far all agree.   It is, however, contended that section 7 of that act may stand alone as a separate and independent enactment, unaffected by the declared unconstitutionality of chapter 28 which created the court of visitation and defined its powers and jurisdiction in relation to railways, and the conceded invalidity of chapter 38, in so far as the like jurisdiction and power of that court was attempted to be extended over the telegraph lines and service of the state.

In considering the merits of this contention and the ability of section 7 to stand alone as an independent enactment, in what light must it be viewed?   What

well recognized and established principles of the law must be applied ? This court in *In re Hall, Petitioner,* 38 Kan. 670, 17 Pac. 649, held :

"Laws enacted by the same legislature about the same time and concerning the same subject-matter, being *in pari materia,* are to be taken and considered together in order to determine the legislative purpose and arrive at the true result."

Prior to 1898 there existed in this state a board of railroad commissioners. By chapter 29, Laws of 1898, the act creating that board and all acts in relation thereto were expressly repealed, and the court of visitation, a new creation, formerly unknown to the state, was created, and its power and jurisdiction over the railways of the state was therein defined. Chapter 38, passed at the same extra session of the legislature, and about the same time, extended like power, jurisdiction and control of that body over the telegraphs of the state, and by chapter 19, Laws of 1898, like power, jurisdiction and control as was given the court of visitation over railways and telegraphs was extended over the express companies of the state, all evincing one general scheme of legislation of which the new court of visitation, with complicated, strange and varied powers, was the central and paramount idea. Hence we arrive at the conclusion that the provisions of chapter 38 must be viewed in the same light, and construed in the same manner and with like results as though that chapter formed a part of the parent act, chapter 28. Thus considered as one law, parts of which have been stricken down by the mandate of this court, how are the remaining provisions to be construed, and what presumptions in regard to the validity of the remaining provisions are

to be indulged ?   In a note to Cooley's Constitutional Limitations, 5th ed., 213, it is said :

"It must be obvious in any case where part of an act is set aside as unconstitutional, that it is unsafe to indulge in the same extreme presumptions in support of the remainder that are allowable in support of a complete act when some cause of invalidity is suggested to the whole of it.   In the latter case, we know the legislature designed the whole act to have effect, and we should sustain it if possible ; in the former, we do not know that the legislature would have been willing that a part of the act should be sustained if the remainder were held void, and there is generally a presumption more or less strong to the contrary. While, therefore, in the one case the act should be sustained unless the invalidity is clear, in the other the whole should fall unless it is manifest the portion not opposed to the constitution can stand by itself, and that in the legislative intent it was not to be controlled or modified in its construction and effect by the part which was void."

The same rule was stated by Bartholomew, C. J., in delivering the opinion in *Martin v. Tyler*, 4 N. Dak. 278, 298, 60 N. W. 392, 25 L. R. A. 838, as follows :

"It is our duty to sustain statutes in their entirety when possible, and to that we must indulge all reasonable presumptions in favor of their constitutionality. But, when a statute has been once emasculated, these presumptions no longer obtain in support of the remainder.   It should then be manifestly clear that the remaining portion can stand by itself, and that the legislature did not intend that such portion should be controlled and modified in its construction and effect by the rejected part."   ( See, also, *State v. Stewart*, 52 Neb. 243, 71 N. W. 998 ; *Skagit County v. Stiles*, 10 Wash. 388, 39 Pac. 116.)

Therefore, the general rule that every reasonable presumption is to be indulged in favor of the consti-

tutionality of an entire act, or a portion of an entire act, no part of which has been held void, does not here obtain, but it must be clear from a consideration of the entire act that the remaining provisions, one of which is now challenged, are not dependent upon those portions of the act heretofore declared void, but may stand as a valid, separate and independent enactment. This court, in *C. B. U. P. Rld. Co. v. A. T. & S. F. Rld. Co.*, 28 Kan. 453, held:

"While it is undoubtedly true that a statute may be constitutional in one part and unconstitutional in another, yet this rule obtains only where the two parts are separate and independent; and where they are so related that the latter is a condition of, a compensation for or an inducement to the former, or where it is obvious that the legislature, having respect to opposing rights and interests, would not have enacted one but for the other, then the unconstitutionality of the latter avoids the entire statute."

In the opinion, delivered by Justice Brewer, it was said:

"And now we remark in the first place, that while it is undoubtedly true that a statute may be constitutional in part and unconstitutional in part, yet as a general proposition it has its limitations. The mere fact that the one part standing alone would be within the scope of the legislative power, does not prove that it can be upheld when coupled with other matter. If such other matter conflicts with the constitution and must fall, then the constitutionality of the first depends upon the extent and closeness of its connection with the second. If the first be conditioned upon the second, or if it is apparent that the legislature would not have enacted the first but for the second, that the latter was as it were an inducement to the former, and that only by virtue of a concurrence of the two would it be presumed that in the judgment of the law-making power the respective rights of antagonistic parties would be preserved, then with the fall of the

second falls also the first.  It is not enough to say that the legislature might have legally enacted the first alone.   When it has coupled the two together the failure of the latter invalidates the former ; and this for the reason that because of the mutuality of the two, the relation *inter sese*, the dependence of the one upon the other, the correspondence of blessing and burden, it must be presumed that the one was an inducement to or a condition of the other ; that the legislature would not have enacted one but for the other.''

In support of the argument made, there was cited and quoted from with approval Cooley on Constitutional Limitations, 179 ; the argument of Shaw, C. J., in *Warren and others v. Mayor and Aldermen of Charlestown, etc.*, 2 Gray, 84 ; *Slauson et al. v. City of Racine*, 13 Wis. 398 ; *Meshmeier v. The State*, 11 Ind. 482 ; *Lathrop v. Mills*, 19 Cal. 513.

Viewed in the light of this authority and the many others elucidating the general rule here enunciated, can it be held that the provisions of the act now under consideration, providing for a forfeiture, may stand as a valid, separate and independent enactment?  We think not.   Nor do we think, as contended by counsel for defendant in error, that the parts of the law heretofore held unconstitutional and void may not be looked to in determining the validity of the remaining portions of the law.   In *Commonwealth v. Potts*, 79 Pa. St. 164, it was held : ''Although the proviso was not effectual because of its unconstitutionality, it could not be stricken out in interpreting the section.''

Coming now to the relation and dependence of that provision of the act here assailed, an examination of the act shows that section 2 of chapter 38 fixes a rate at which messages shall be transmitted and delivered within the state, but section 1 declares such rate to

have been established temporarily, subject to regulation and change by the court of visitation and not as a permanent fixing of rates by the legislature. This is shown by section 1 of the act above quoted, wherein it is provided that *the court of visitation shall have the same power, jurisdiction and control over the reasonableness of rates fixed in the act or thereafter to be fixed by the court* as was conferred upon the court to fix rates for the railway companies of the state, for when reference is made to that act it is found that the power of the court to fix rates for services performed by railroad companies is left entirely to the judgment of the court. By an examination of the language employed in section 7, it will be seen that that section does not provide a penalty or forfeiture for failure, refusal or neglect of the defendant company to receive, transmit, and deliver, without unnecessary delay, messages over its lines, under contract with the sender generally, but for failure, neglect or refusal to receive, transmit, and deliver, without unnecessary delay, all messages presented, *after payment or tender of the charges fixed in the act.* Manifestly, therefore, it was the intent of the legislature that the whole subject of telegraphic service, including the rates to be charged for services performed within the state, should be under the direct control of the court so created and subject to change at liberty by ruling of that court. To enforce compliance with the rulings of that court section 7 was enacted. The validity of the act creating the court and extending its powers over the railroads of the state has been denied. Thus, the general scheme of legislation of which that court was the central figure having failed, it must be held that the section now under consideration, providing a penalty or forfeiture for non-compliance with the rulings of a body created by act of the legislature,

Railroad Co. v. Gaston.

but void for want of legal existence, is inoperative and void.

Other questions are discussed by counsel. The decision made renders the consideration of them unnecessary. It follows that the judgment must be reversed, with directions to proceed further in accordance with this opinion.

All the Justices concurring.