No. 25,396.

THE STATE OF KANSAS, ex rel. THE PUBLIC UTILITIES COMMISSION and C. B. GRIFFITH, as Attorney-general, *Plaintiff*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Defendant*.

SYLLABUS BY THE COURT.

1. MANDAMUS—*Verified Petition Complies with Rule 3 of Supreme Court.* A verified petition in mandamus filed by the state on the relation of the public utilities commission sufficiently complies with rule No. 3 of this court, where the petition shows on its face that the matters presented for adjudication are of a public nature and that their speedy determination is desirable.

2. SAME—*Public Utilities Commission Authorized to Inspect Books, Accounts, Papers, Records, Property, etc., of Kansas Public Utilities.* Under section 8357 of the General Statutes of 1915, an inspection and examination of the books, accounts, papers, records, property, and memoranda of a public utility organized under the laws of this state and operating within the state may be made by the public utilities commission or its agents, accountants, and examiners although there is no complaint on file with the commission or proceeding pending before it which requires such inspection or examination.

3. SAME—*Such Inspection and Examination Does Not Violate Section 15 of the Bill of Rights.* An inspection and examination, made under section 8357 of the General Statutes of 1915, by the public utilities commission, its agents, accountants, and examiners of the books, accounts, papers, records, property, and memoranda of an interstate railroad organized under the laws of this state and operating within it, does not violate section 15 of the bill of rights of the constitution of this state.

4. SAME—*Such Inspection and Examination Does Not Conflict with the Duties and Power of the Interstate Commerce Commission.* The interstate commerce act giving to the interstate commission power to prescribe the form in which the accounts, records, and memoranda of an interstate carrier shall be kept, does not deny to the state the right to inspect and examine such books, accounts, etc., of an interstate carrier organized under the laws of the state and operating within it.

The State, *ex rel.*, v. Railway Co.

Original proceeding in mandamus. Opinion filed December 21, 1923. Motion to quash alternative writ denied.

*Fred S. Jackson,* of Topeka, and *Maurice Murphy,* of St. Marys, for the plaintiff.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the defendant.

The opinion of the court was delivered by

MARSHALL, J.: In this action, the plaintiff seeks to compel the defendant to permit the public utilities commission and its agents, accountants, and examiners to inspect and examine the books, accounts, papers, records, property and memoranda concerning repairing, rebuilding, and making additions and betterments to locomotives, passenger and freight cars used by the defendant as a public utility and common carrier. The inspection and examination desired is of the books, accounts, etc., commencing in January, 1916, and running to November 7, 1923. The petition alleges that the defendant refused to allow such inspection and examination. An alternative writ of mandamus has been issued, and the defendant has filed a motion to quash that writ.

1. It is urged that the plaintiff has not complied with rule No. 3 of this court. That rule, in part, reads:

"In all original actions or proceedings instituted in this court the plaintiff or applicant for the writ shall show fully, by affidavit, the reasons why the action or proceeding is brought in this court instead of one of the inferior courts having concurrent jurisdiction."

There is nothing to show why this action is commenced in this court instead of in a district court except what is contained in the petition itself. The petition is verified and alleges facts which show that the question in controversy is a matter of public concern and that an early disposition of the case is necessary. The petition alleges facts which show that the action is one that is properly commenced in this court.

2. The petition does not allege that there is any complaint or any proceeding pending before the public utilities commission making it necessary for the commission to examine the books, accounts, etc., of the defendant. It argues that, because there is nothing pending before the commission requiring an inspection or examination of the books of the defendant, it is not compelled to submit its books, accounts, etc., for examination or inspection. Is it necessary that some matter be pending before the commission before it can properly

make an inspection or examination of the accounts, books, records, etc., of the defendant?

Section 8357 of the General Statutes of 1915, section 29 of the public utilities act, reads:

"The commission shall have authority to examine and audit all accounts, and all items shall be allocated to the accounts prescribed by the commission. The agents, accountants or examiners employed by the commission shall have authority under the direction of the commission to inspect and examine any and all books, accounts, papers, records, property, and memoranda kept by such public utilities and common carriers. The accounts shall be closed annually on the 30th day of June, and a balance sheet of that date promptly taken therefrom."

This statute does not require that anything be pending with the commission before it shall have power to examine the accounts of a public utility. The authority given appears to be coördinate with the other powers given to the commission and does not appear to be subordinate to any of them nor dependent on any other provision of the public utilities law. That authority is given for the purpose of aiding the commission in the performance of the duties imposed on it by law. The statute, on its face, standing alone, gives to the commission power to make the desired inspection and examination.

3. The defendant argues that—

"The unwarranted invasion of the defendant's offices by the examiners and accountants of the Public Utilities Commission, interfering with the daily business of the carrier, its clerks and employees, in compiling its records and keeping its books, would amount to an unreasonable search, in violation of section 15 of the Bill of Rights of the Constitution of this state."

Section 15 of the bill of rights of this state reads:

"The right of the people to be secure in their persons and property against unreasonable searches and seizures, shall be inviolate; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person or persons or property to be seized."

We quote from 3 Bouvier's Law Dictionary, 3404, as follows:

"VISITATION. The act of examining into the affairs of a corporation.

"The power of visitation is applicable only to ecclesiastical and eleemosynary corporations. 1 Bla. Com. 480. The visitation of civil corporations is by the government itself, through the medium of the courts of justice. See 2 Kent 240. In the United States, the legislature is the visitor of all corporations founded by it for public purposes. *Dartmouth College v. Woodward,* 4 Wheat. (U. S.) 518, 4 L. Ed. 629.

"All of the above was quoted in *Guthrie v. Harkness,* 199 U. S. 148, 157, 26 Sup. Ct. 4, 50 L. Ed. 130, 4 Ann. Cas. 433. . . .

"Under the visitatorial powers of a state over corporations doing business within its borders, it is competent for it to compel such corporations to produce their books and papers for investigation and to require the testimony of their officers and employees to ascertain whether its laws have been complied with, and this power extends to the production of books and papers kept outside of the state, and a statute requiring such production does not amount to an unreasonable search or seizure or a denial of due process of law. *Consolidated R. Co. v. Vermont,* 207 U. S. 541, 28 Sup. Ct. 178, 52 L. Ed. 327, 12 Ann. Cas. 658; *Hammond P. Co. v. Arkansas,* 212 U. S. 322, 29 Sup. Ct. 370, 53 L. Ed. 530, 15 Ann. Cas. 645. A corporation, being the creature of the state, has not the constitutional right to refuse to submit its books and papers for an examination at the suit of the state, and an officer of a corporation charged with criminal violation of a statute cannot plead the criminality of the corporation as a refusal to produce its books. *Hale v. Henkel,* 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652. A corporation is bound to furnish information when called for by the state, so far as reasonably possible, and state the facts which excuse them from answering more fully; *State v. Express Co.,* 81 Minn. 87, 83 N. W. 465, 50 L. R. A. 667, 83 Am. St. Rep. 366; by statute the right exists in Kansas; see *Western U. Tel. Co. v. Austin,* 67 Kan. 208, 72 Pac. 850.

"It may be considered that, to a certain extent, railroad commissions are the machinery created by law for the exercise of visitatorial power."

We quote from *Guthrie v. Harkness,* 199 U. S. 148, as follows:

" 'Visitation, in law, is the act of a superior or superintending officer, who visits a corporation to examine into its manner of conducting business, and enforce an observance of its laws and regulations. Burrill defines the word to mean 'inspection; superintendence; direction; regulation.' " (p. 158.)

"At common law the right of visitation was exercised by the King as to civil corporations, and as to eleemosynary ones, by the founder or donor. 1 Cooley's Bl. Com. 481. 'In the United States, the legislature is the visitor of all corporations created by it, where there is no individual founder or donor, and may direct judicial proceedings against such corporations for such abuses or neglects as would at common law cause a forfeiture of their charters.' 1 Cooley's Bl. Com. 482, Note.

"In the case before us, the supreme court of Utah quotes from Merrill on Mandamus, as follows:

" 'Visitors of corporations have power to keep them within the legitimate sphere of their operations, and to correct all abuses of authority, and to nullify all irregular proceedings. In America there are very few corporations which have private visitors, and, in the absence of such, the state is the visitor of all corporations.' "

The defendant is a corporation organized under the laws of the state of Kansas. Public utilities operating within a state are, within certain limited fields, subject to the control of the state. Laws subjecting public utilities to partial control by the state are valid.

The business of all corporations created by the state is subject to the control of the state while those corporations are operating therein except where that control violates some provision of the constitution of the state or of the United States. The inspection and examination by this state of the books, accounts, papers, records, property, and memoranda of a domestic corporation is not an unreasonable search and seizure thereof and does not violate the constitution of this state. An unwarranted interference with the business of a public utility by an inspection and examination of its accounts, books, records, and property will not be compelled and might be very properly enjoined; but it cannot be assumed by this court that the public utilities commission intends to make an inspection or examination for any improper purpose whatever. The court must assume that the commission desires first-hand information for its guidance in the discharge of its official duties.

4. The defendant argues that "the interstate commerce commission alone has authority to examine defendant's books, accounts, records, etc." The defendant in its brief sets out a portion of the interstate commerce act, as follows:

"(5) The Commission may, in its discretion, prescribe the forms of any and all accounts, records, and memoranda to be kept by carriers subject to the provisions of this Act, including the accounts, records, and memoranda of the movement of traffic, as well as of the receipts and expenditures of moneys. The Commission shall, as soon as practicable, prescribe, for carriers subject to this act, the classes of property for which depreciation charges may properly be included under operating expenses, and the percentages of depreciation which shall be charged with respect to each of such classes of property, classifying the carriers as it may deem proper for this purpose. The Commission may, when it deems necessary, modify the classes and percentages so prescribed. The carriers subject to this Act shall not charge to operating expenses any depreciation charges on classes of property other than those prescribed by the Commission, or charge with respect to any class of property a percentage of depreciation other than that prescribed therefor by the Commission. No such carrier shall in any case include in any form under its operating or other expenses any depreciation or other charge or expenditure included elsewhere as a depreciation charge or otherwise under its operating or other expenses. The Commission shall at all times have access to all accounts, records, and memoranda, including all documents, papers, and correspondence now or hereafter existing, and kept or required to be kept by carriers subject to this act, and the provisions of this section respecting the preservation and destruction of books, papers, and documents shall apply thereto, and it shall be unlawful for such carriers to keep any other accounts, records, or memoranda than those prescribed or approved by the Commission,

and it may employ special agents or examiners, who shall have authority under the order of the commission to inspect and examine any and all accounts, records, and memoranda, including all documents, papers, and correspondence now or hereafter existing, and kept or required to be kept by such carriers. This provision shall apply to receivers of carriers and operating trustees. The provisions of this section shall also apply to all accounts, records, and memoranda, including all documents, papers, and correspondence now or hereafter existing, kept during .the period of Federal control, and placed by the President in the custody of carriers subject to this act.

"(6) In case of failure or refusal on the part of any such carrier, receiver, or trustee to keep such accounts, records, and memoranda on the books and in the manner prescribed by the Commission or to submit such accounts, records, and memoranda as are kept to the inspection of the commission or any of its authorized agents or examiners, such carrier, receiver, or trustee shall forfeit to the United States the sum of five hundred dollars for each such offense and for each and every day of the continuance of such offense, such forfeitures to be recoverable in the same manner as other forfeitures provided for in this act.

"(7) Any person who shall willfully make any false entry in the accounts of any book of accounts or in any record or memoranda kept by a carrier, or who shall willfully destroy, mutilate, alter, or by any other means or device falsify the record of any such account, record, or memoranda, or who shall willfully neglect or fail to make full, true, and correct entries in such accounts, records, or memoranda of all facts and transactions appertaining to the carrier's business, or shall keep any other accounts, records, or memoranda than those prescribed or approved by the commission, shall be deemed guilty of a misdemeanor, and shall be subject, upon conviction in any court of the United States of competent jurisdiction, to a fine of not less than one thousand dollars nor more than five thousand dollars or imprisonment for a term not less than one year nor more than three years, or both such fine and imprisonment: *Provided,* That the Commission may in its discretion issue orders specifying such operating, accounting, or financial papers, records, books, blanks, tickets, stubs, or documents of carriers which may, after a reasonable time, be destroyed, and prescribing the length of time such books, papers, or documents shall be preserved.

"(8) Any examiner who divulges any fact or information which may come to his knowledge during the course of such examination, except in so far as he may be directed by the commission or by a court or judge thereof, shall be subject, upon conviction in any court of the United States of competent jurisdiction, to a fine of not more than five thousand dollars or imprisonment for a term not exceeding two years, or both.

"(9) That the circuit and district courts of the United States shall have jurisdiction, upon the application of the Attorney General of the United States at the request of the Commission, alleging a failure to comply with or a violation of any of the provisions of said Act to regulate commerce or of any Act supplementary thereto or amendatory thereof by any common carrier, to issue a writ or writs of mandamus commanding such common carrier to comply with the provisions of said acts, or any of them."

The interstate commerce act regulates the manner in which the accounts of the defendant shall be kept. The state cannot in any way interfere therewith. Congress has legislated in that field, and the state cannot enter it. But, it does not appear that the state, through the public utilities commission, is attempting to regulate the manner in which the accounts of the defendant shall be kept; the state desires to inspect and examine those accounts. The statute authorizing an examination and inspection of the books, accounts, records, etc., of the defendant does not invade any field governed by the interstate commerce act.

In this connection, it is also urged that the interstate commerce act prohibits the examiners of the interstate commerce commission from divulging any information received by them during the course of their examination. It is argued that because there is no inhibition against the public utilities commission or its accountants revealing the information obtained by them, an examination by them is in conflict with the interstate commerce act. The fact that the interstate commerce act prohibits examiners of that commission from revealing information obtained by them, does not prevent the state from authorizing the public utilities commission to make such an examination of the accounts of the defendant as may be necessary for the commission to have in performing the duties imposed on it by law.

To hold that the state cannot inspect and examine the books, accounts, records, etc., of domestic corporations, would be to say that the state which creates corporations has not the reserved power to control them. If the state's purposes in creating them—to serve the public convenience—do not materialize, or if the march of time shall develop better modes for achieving those objects than by chartering corporations, they may be abolished altogether. Our constitution provides: "Corporations may be created under general laws; but all such laws may be amended or repealed." (Const., art. 12, § 1.)

The motion to quash the alternative writ of mandamus is denied. The defendant is given ten days in which to answer.