June 16, 1978

## 78-33  MEMORANDUM OPINION FOR THE GENERAL COUNSEL, INTERSTATE COMMERCE COMMISSION

### Interstate Commerce Commission—Furnishing Information to Congress (49 U.S.C. § 322(d))

This is in response to your inquiry whether employees of the Interstate Commerce Commission (the Commission) may, under section 222(f) of the Interstate Commerce Act (the Act), 49 U.S.C. § 322(f), furnish documents or information to a member of the staff of the Subcommittee on Antitrust and Monopoly of the Senate Committee on the Judiciary without fear of possible criminal liability under § 222(d) of the Act, 49 U.S.C. § 322(d). We conclude that, subject to the conditions set forth herein, employees of the Commission may lawfully furnish to members of the Subcommittee staff information protected by § 222(d).

1. The first question presented is whether the exception provided in § 222(f) applies to the prohibition against the release of "any fact or information" set forth in § 222(d). We think that § 222(f) clearly provides an exception to the prohibition established in § 222(d). Section 222(f) provides in pertinent part:

> Nothing in this part shall be construed to prevent the giving of such information . . . to any officer or agent of the Government of the United States or of any State, Territory, or District thereof, in the exercise of his power.

The phrase "nothing in this part" refers to the entire Motor Carrier Act of 1935, Pub. L. No. 255, August 9, 1935 (49 Stat. 543), which was included at the time of its enactment as "Part II" of the Interstate Commerce Act. Because § 222(d) is a provision in "Part II," it would seem that the exception in § 222(f) applies to the latter provision as it does to all other provisions of "Part II." In addition, we think the exception provided for "such information" in § 222(f) is broad enough to reach the prohibition on the disclosure of "any fact or information" in § 222(d). We thus believe § 222(f) provides an exception to whatever prohibition exists by reason of § 222(d).

2. You also ask whether a subcommittee investigator or attorney is an "officer or agent of the Government of the United States" within the meaning

of § 222(f). We believe that such subcommittee officials come within the meaning of this phrase.

Our conclusion is based on both the language of § 222(f) and its legislative history. Simply relying on the plain meaning of the above phrase leads us to the conclusion that Congress and those who work for the Congress (or its committees) are included. This reading of the statute is supported by the evident intent displayed by other parts of § 222(f). That provision allows disclosure

> . . . in response to any legal process issued under the authority of any court, or to any officer or agent of the Government of the United States or of any State, Territory, or District thereof, in the exercise of his power, or to any officer or other duly authorized person seeking such information for the prosecution of persons charged with or suspected of crimes.

The Congress, by allowing disclosure in response to legal process issued by a court, or to *any* officer or agent of the United States Government or of any State, territory, or district, or to *any* officer or other duly authorized person seeking information for purposes of prosecution, evidently intended that the prohibitions against disclosure in "Part II" of the Act should not interfere with the orderly processes of government. This underlying purpose clearly extends to the various activities conducted by the Congress and thus § 222(f) allows disclosure of the information subject to § 222(d) in order to facilitate the Congress' legitimate activity.

The meager legislative history of § 222(f) also supports this conclusion. As noted above, § 222(f) was enacted as part of the Motor Carrier Act of 1935, but no explanation was offered concerning Congress' intent underlying that provision. However, its language closely tracks, and apparently was modeled on, the language of § 15(13) of the Interstate Commerce Act, 49 U.S.C. § 15(13). *See* S.Rept. No. 433, 76th Cong., 1st sess. p. 15 (1939). This latter statute was originally added by floor amendment to the Mann-Elkins Act, Pub. L. No. 309, June 18, 1910 (36 Stat. 553) in a context, like that of the present situation, of providing an exception to a prohibition on the disclosure of information. Its intent, as set forth by Senator Burton, the sponsor of the amendment, was as follows:

> Mr. President, very briefly I will explain the evil or injustice which this amendment is intended to prevent. It has developed in judicial proceedings in two instances that certain great industrial combinations maintain information bureaus. Those engaged in the work of these bureaus, by divers methods, none of which, I think, can be rated as commendable, obtain from railway corporations, or through their agents, information relating to the business of their minor competitors. For example, a great establishment ascertains that a competitor intends to ship into the State of Ohio, Indiana, or Texas a consignment of merchandise. The amount of that merchandise becomes known to the information bureau, and the name of this

consignee is also ascertained. Using this information, a strenuous effort is made to prevent the competitor from disposing of his merchandise, from making any sales in the locality to which the shipment is made. An unfair advantage is thus given to the larger establishment, which enables it, in a measure, to crush out competition. I have a mass of information on this subject, if there is a desire that I should read it. [45 Cong. Rec. 7207 (1910)]

It seems clear from this statement that Congress' concern in this area was the use of information to secure unfair competitive advantages, *see, United States* v. *Baltimore and Ohio Railroad Co.*, 319 F. Supp. 1103, 1105 (D. Md. 1970); *Commonwealth* v. *White*, 179 S.W. 469, 470 (Ct. App. Ky. 1915); *Mandell* v. *Long Island Railroad Co.*, 227 I.C.C. 278 (1938); nothing was said to indicate that the provisions were designed to impinge on the processes of Government. As such, since §§ 222(d) and (f) appear to be founded on this same concern, we believe that it would distort Congress' purposes underlying these provisions to conclude that they operate to preclude Congress from obtaining access to information held by the Commission. This suggests that the term "officer or agent of the Government of the United States" in § 222(f) is meant to include officials acting on behalf of Congress.

Finally, the limited case law interpreting provisions comparable to § 222(d) and (f) further supports this result. The courts generally have not interpreted these comparable provisions to impose inflexible or rigid requirements on access to information subject to a general prohibition on disclosure. Rather, the decisions have allowed access to such information by Federal agencies. *See, D.G. Bland Lumber Co.* v. *N.L.R.B.*, 177 F. (2d) 555, 558 (5th Cir. 1949); by State agencies, *State* v. *Atchison, T. and S. F. Ry. Co.*, 221 P. 259, adhered to by 225 P. 1026 (S. Ct. Kan. 1923-1924); by those seeking discovery in litigation, *Delta Steamship Lines, Inc.* v. *National Maritime Union*, 265 F. Supp. 654 (E.D. La. 1967); and even by ordinary citizens acting pursuant to a State statute, *State* v. *Seaboard Air Line Ry.*, 84 S.E. 283 (S. Ct. N. Car. 1915), *aff'd*, 245 U.S. 298 (1917). In view of the rather large number of individuals or entities to whom the courts have allowed access to information under provisions comparable to § 222(d) and (f), we think it unreasonable to conclude that these latter provisions should be applied restrictively. Again, this suggests that Congress is not barred from access to the information protected by § 222(d).

We thus conclude, for the foregoing reasons, that the term "officer or agent of the Government of the United States" includes officials acting on behalf of the Congress.

3. The fact that information protected by § 222(d) may be released to officials acting on behalf of the Congress does not mean, however, that they have unlimited access to such information. The statute grants access to the information to an officer or agent of the Government of the United States "in the exercise of his power." In our view, this condition necessarily calls for an inquiry whether the officials seeking access to information protected by § 222(d) are acting within the proper limits of their authority.

We have found no court decisions with respect to either § 222(f) or analogous provisions that are helpful in determining when an official acting on behalf of the Congress would satisfy the requirement "in the exercise of his power." We believe, however, that decisions of the courts on the legitimate scope of congressional power to investigate are instructive on this question. They set forth a number of factors bearing on Congress' power of investigation. *See generally, Wilkinson* v. *United States,* 365 U.S. 399, 408-09 (1961); *Ashland Oil, Inc.* v. *F.T.C.,* 409 F. Supp. 297, 305 (D.D.C. 1976), *aff'd,* 548 F. (2d) 977 (D.C. Cir. 1976). For example, the investigation must be pursuant to a valid legislative purpose, *e.g., Quinn* v. *United States,* 349 U.S. 155, 161 (1955); *Ashland Oil, Inc.* v. *F.T.C., supra,* at 305, n. 8; the congressional entity conducting the investigation must be authorized by Congress to do so, *e.g., Gojack* v. *United States,* 384 U.S. 702, 716 (1966), and must conduct the investigation in the manner prescribed by the Congress, *e.g., Liveright* v. *United States,* 347 F. (2d) 473 (D.C. Cir. 1965); *Shelton* v. *United States,* 327 F. (2d) 601 (D.C. Cir. 1963); and the specific inquiries must be pertinent to the subject matter of the investigation. *Wilkinson* v. *United States, supra; Ashland Oil, Inc.* v. *F.T.C., supra.* Any determination whether these criteria are met depends upon the facts and circumstances of each particular investigation, and we thus are not in a position to address such questions here. Rather, since these questions must be answered in a specific factual context, it is for the Commission to ascertain whether a subcommittee staff member seeking information is acting "in the exercise of his power" in a particular situation.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*