NOT DESIGNATED FOR PUBLICATION

No. 121,765

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FIRST SECURITY BANK,
*Appellee*,

v.

DAVID BUEHNE and LINSAY BUEHNE, et al.,
*Appellants*.

MEMORANDUM OPINION

Appeal from Meade District Court; E. LEIGH HOOD, judge. Opinion filed September 18, 2020. Affirmed.

*Zachary D. Schultz*, of Schultz Law Office, P.A., of Garden City, for appellants.

*James C. Dodge*, of Sharp McQueen, P.A., of Liberal, for appellee.

Before ATCHESON, P.J., BRUNS and POWELL, JJ.

PER CURIAM: First Security Bank filed this foreclosure action against David Buehne and Linsay Buehne after they defaulted on a commercial promissory note in the principal amount of $323,000. The commercial promissory note was secured by a real estate mortgage as well as a security agreement in car wash equipment used in the Buehnes' business. It is undisputed that the Buehnes have failed to make any payments under the terms of the commercial promissory note.

1

The Buehnes responded to the foreclosure petition by alleging that the Bank's claim is barred by the five-year statute of limitations set forth in K.S.A. 60-511. In response, the Bank asserted—among other things—that the Buehnes had waived their right to assert the statute of limitations as an affirmative defense based on the express terms of the commercial promissory note. Subsequently, both the Bank and the Buehnes filed motions for summary judgment. After holding a hearing on the competing motions, the district court entered summary judgment in favor of the Bank as a matter of law. Ultimately, the district court entered a final judgment of foreclosure in favor of the Bank and against the Buehnes.

On appeal, the Buehnes contend that the district court erred by failing to find that the Bank's foreclosure action was barred by the statute of limitations. However, based on the plain and unambiguous language of the commercial promissory note, we find that the Buehnes waived their right to assert the statute of limitations as an affirmative defense. Moreover, we do not find that the waiver provision in the promissory note violates public policy. Because Kansas law recognizes the freedom to contract and presumes contracts to be legal, we conclude that the Buehnes' waiver of the statute of limitations in this commercial promissory note to be valid and enforceable. Thus, we affirm.

FACTS

On June 28, 2005, David Buehne and Linsay Buehne executed and delivered to First Security Bank of Beaver, Oklahoma, a commercial promissory note in the principal amount of $323,000 plus interest. As security for the business loan, the Buehnes granted the Bank a commercial real estate mortgage in certain real property located in Meade County, Kansas. In addition, the Buehnes granted the Bank a security interest in all of the car wash equipment used in their business. On the same day that the promissory note was signed by the Buehnes, the Bank recorded the mortgage in the Office of the Register of Deeds of Meade County.

The commercial promissory note had a maturity date of October 28, 2025. Under the terms of the note, the Buehnes were to make four payments of interest only beginning on July 28, 2005. These payments were to be followed by 240 payments of $2,524.09 beginning on November 28, 2005, until the obligation was paid in full. The promissory note also gave the Bank the option to accelerate the unpaid balance in the event of default and included a box that was checked stating that the "obligation is payable on demand."

In addition, the commercial promissory note contained the following provision:

"WAIVER OF CERTAIN RIGHTS—If the Lender delays enforcement or decides not to enforce any of the provisions of this Note, including my Note to make timely payments, it will not lose its right to enforce the same provisions later nor any other provisions of this Note. I waive the right to receive any notice of any waiver or delay or presentment, demand, protest, or dishonor. I also waive any applicable statute of limitations to the full extent permitted by law and I waive any right I may otherwise have to require the Lender to proceed against any person or security before suing me to collect this loan."

It is undisputed that the Buehnes failed to make any of the payments as required by the terms of the commercial promissory note. As a result, the Bank sent the Buehnes a letter dated August 17, 2006, stating that "demand is hereby made that the unpaid balance of principal, accrued interest and penalty, if applicable, be paid on or before ten days from the date of this letter." When the Buehnes failed to respond to the initial letter, the Bank sent them another letter on November 27, 2006, which stated:  "Since DEMAND has been made on the unpaid balance and you have failed to respond, we regret that we have no alternative but to turn this matter over to the bank's ATTORNEY for legal action."

More than seven years later, on May 21, 2014, the Bank filed this foreclosure action against the Buehnes. Although the lawsuit was originally filed in Seward County, it was eventually transferred to Meade County. In their answer, the Buehnes asserted the

3

statute of limitations as an affirmative defense. Subsequently, the Bank moved for summary judgment, and the Buehnes responded by filing a summary judgment motion of their own.

On March 5, 2019, the district court held a hearing on the motions for summary judgment. At the end of the hearing, the district court announced that it was granting the Bank's motion and denying the Buehnes' motion. Later, on April 15, 2019, the district court entered a journal entry in which it found that there were no genuine issues of material fact and that the Bank was entitled to judgment as a matter of law. In particular, the district court found that the Bank "did not affirmatively act toward enforcing the option [to accelerate the loan] until 2014 and [this] action began within the statute of limitations."

About two months later, on June 25, 2019, the district court entered a final judgment in favor of the Bank. In addition to entering a judgment against the Buehnes for the amount due under the terms of the commercial promissory note, the district court ordered that the commercial real estate mortgage be foreclosed, that the property be sold, and that the proceeds from the sale—after the payment of costs—be applied toward the monetary judgment. The district court also granted the Buehnes the right of redemption for a period of three months. Thereafter, the Buehnes filed a timely notice of appeal.

ANALYSIS

On appeal, the Buehnes contend that the Bank's claim under the commercial promissory note and real estate mortgage is barred by the statute of limitations. In particular, they suggest that the statute of limitations began to run when the Bank sent them letters in 2006 demanding payment in full and stating that the matter would be turned over to an attorney for legal action. As a result, the Buehnes argue that the statute of limitations expired prior to the Bank filing this foreclosure action in 2014.

4

In response, the Bank contends that the statute of limitations did not start to run until 2014 when it took the affirmative step of retaining an attorney to pursue this foreclosure action. Additionally, the Bank argues that under the terms of the commercial promissory note, the Buehnes waived their right to assert the statute of limitations as an affirmative defense. In reply, the Buehnes argue that the waiver provision in the promissory note is "void against public policy and unenforceable."

This case comes to us after the district court granted summary judgment in favor of the Bank. When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. K.S.A. 2019 Supp. 60-256(c)(2); see Kansas Supreme Court Rule 141 (2020 Kan. S. Ct. R. 205). When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. In considering a motion for summary judgment, a district court is to resolve all facts—as well as inferences that may reasonably be drawn from the evidence—in favor of the party against whom the ruling is sought. On appeal, we apply the same rules as the district court. *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

The resolution of this appeal requires us to interpret the terms of the commercial promissory note that the Buehnes signed to obtain a business loan from the Bank. At the outset, we note that "'the paramount public policy is that freedom to contract is not to be interfered with lightly.'" *Marshall v. Kansas Med. Mut. Ins. Co.*, 276 Kan. 97, 108, 73 P.3d 120 (2003) (quoting *Foltz v. Struxness*, 168 Kan. 714, 721-22, 215 P.2d 133 [1950]); see *Pfeifer v. Federal Express Corp.*, 297 Kan. 547, 551, 304 P.3d 1226 (2013); *Wasinger v. Roman Catholic Diocese of Salina*, 55 Kan. App. 2d 77, 80, 407 P.3d 665 (2017). Furthermore, contracts are presumed to be legal and the burden rests on the party

challenging a written agreement—or any provision thereof—to prove that it is illegal or violates public policy. *Nat'l. Bank of Andover v. Kansas Bankers Sur. Co.*, 290 Kan. 247, 257, 225 P.3d 707 (2010).

The interpretation and legal effect of a written instrument are matters of law over which our review is unlimited. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014). "The primary rule in interpreting written contracts is to ascertain the intent of the parties. If the terms of the contract are clear, there is no room for rules of construction, and the intent of the parties is determined from the contract itself." *Liggatt v. Employers Mutual Cas. Co.*, 273 Kan. 915, 921, 46 P.3d 1120 (2002). In other words, where there is no ambiguity, we ascertain the intent of the parties from the four corners of the written agreement, construing all provisions in harmony with each other. *Iron Mound v. Nueterra Healthcare Management*, 298 Kan. 412, 418, 313 P.3d 808 (2013).

As they did before the district court, the parties focus much of their attention in their briefs on the question of when the statute of limitations began to run. In particular, they concentrate on the acceleration provision in the commercial promissory note. "An acceleration clause provides that the entire balance of the obligation becomes due and payable upon the occurrence of any event of default." *Foundation Property Investments v. CTP*, 286 Kan. 597, 603, 186 P.3d 766 (2008) (citing 1 Clark, The Law of Secured Transactions under the Uniform Commercial Code, ¶ 2.02[5], p. 2-66 [rev. ed. 2008]). In Kansas, two types of acceleration clauses are recognized. "In one type of clause, upon default the acceleration is automatic. In the other type of clause, upon default whether acceleration occurs is optional with the lender." 286 Kan. at 603. "No particular words are necessary to convey the concept [of optional acceleration], but certainly the use of 'option' is strongly indicative, if not dispositive." 286 Kan. at 604.

6

In *FGB Realty Advisors, Inc. v. Keller*, 22 Kan. App. 2d 853, 855, 923 P.2d 520 (1996), this court held that "[t]he holder of a note containing an option to accelerate must clearly and unequivocally express an intention to exercise the option and then affirmatively act toward enforcing that intention in order to properly exercise the option." Under these circumstances, "the statute of limitations does not begin to run until the holder exercises the option to accelerate the entire amount" and "[i]f the holder elects not to exercise the option upon default, 'the statute would not run earlier than the time originally fixed for the maturity of the note.'" 22 Kan. App. 2d at 854 (quoting *Kennedy v. Gibson*, 68 Kan. 612, 617, 75 P. 1044 [1904]); see McCain, *Judicial Foreclosures in Kansas: Recent Developments Following the Subprime Mortgage Crisis*, 83 J.K.B.A. 20, 25 n.61 (September 2014).

The district court relied upon *FGB Realty Advisors* in granting the Bank's motion for summary judgment. However, we find that it is unnecessary for us to resolve the question of when the statute of limitations began to run in this case. Even if we assume the Buehnes are correct that the statute of limitations began to run when the Bank sent the demand letters in 2006, we find that they waived their right to assert the statute of limitations as an affirmative defense in this action based on the plain and unambiguous terms of the commercial promissory note they signed in order to obtain a business loan from the Bank.

The parties agree that the statute of limitations applicable to this case is found in K.S.A. 60-511(1). It provides that any action on a written agreement or contract must be brought within 5 years. "Statutes of limitations . . . find their justification in necessity and convenience and serve the practical purpose of sparing courts from litigating stale claims and people from being put to the defense of claims after memories fade and witnesses disappear." *Pfeifer*, 297 Kan. at 558 (citing *KPERS v. Reimer & Kroger, Assocs., Inc.*, 262 Kan. 635, 676, 941 P.2d 1321 [1997], and *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 831 P.2d 958 [1992]). However, "the statute of limitations is an affirmative

7

defense that can be waived and is not jurisdictional." *State v. Sitlington*, 291 Kan. 458, 463, 241 P.3d 1003 (2010).

Here, we find that First Security Bank granted the Buehnes a loan for business purposes in the principal amount of $323,000 plus interest. Under the terms of the commercial promissory note, the Buehnes were obligated to repay the Bank in full by the maturity date of October 28, 2025. As security for this indebtedness, the Buehnes delivered to the Bank a commercial real estate mortgage on property located in Meade County. In addition, the Buehnes granted the Bank a security interest in the car wash equipment used in their business.

In order to repay the Bank by the maturity date, the Buehnes agreed to make four payments of interest only beginning on July 28, 2005, to be followed by 240 payments of $2,524.09 beginning on November 28, 2005. It is undisputed that the Bank fulfilled its end of the bargain by delivering the $323,000 to the Buehnes as agreed upon in the commercial promissory note. However, it is also undisputed that the Buehnes have failed to make any payments—of principal or interest—in fulfillment of their obligations under the terms of the commercial promissory note.

As a result of the Buehnes' failure to make the required payments, the Bank declared the loan to be in default and demanded payment in full in 2006. Assuming for the purposes of this appeal that the demand letters sent to the Buehnes triggered the statute of limitations as the Buehnes contend, the Bank would have had until 2011 to file a foreclosure action pursuant to K.S.A. 60-511(1). However, for reasons that are not apparent from the record on appeal, the Bank waited until 2014 to file this action.

It is undisputed that the Buehnes voluntarily signed the commercial promissory note containing a provision indicating the Bank would not lose its right to seek recourse as a result of a delay in enforcement. Likewise, the parties do not dispute that the same

8

provision in the promissory note also provides that the Buehnes agreed to waive their right to assert the statute of limitations as a defense "to the full extent permitted by law."

Nevertheless, the Buehnes argue that we should find the waiver provision to be unenforceable because it violates public policy.

It is important to recognize that the Buehnes do not contend that the waiver provision they agreed to by signing the commercial promissory note is illegal, nor do they argue that the language of this provision is ambiguous. Likewise, they do not claim that they are incompetent, nor do they assert that the waiver provision was entered into as a result of fraud, mistake, or duress. As a result, the only obstacle to enforcement of the waiver provision in the commercial promissory note would be a finding that it is against a well-defined public policy. Consequently, we must "determine whether its terms are so wide of the mark that to enforce them would violate the public policy of our state." *Santa Rosa KM Assocs., Ltd., P.C. v. Principal Life Ins. Co.*, 41 Kan. App. 2d 840, 851, 206 P.3d 40 (2009).

In support of their argument that the waiver provision violates public policy, the Buehnes cite the case of *Hornick v. First Catholic Slovak Union*, 115 Kan. 597, 224 P. 486 (1924). In *Hornick*, a widow attempted to redeem a death benefit certificate—similar to an insurance policy—issued by a fraternal society after her husband died in Kansas. The certificate had been issued in Pennsylvania when the husband became a member of the organization. Moreover, the fraternal society that issued the death benefit certificate was incorporated in Ohio. As such, the *Hornick* court was initially presented with a choice of law issue. 115 Kan. at 597-98.

After determining that Kansas law applied, the *Hornick* court turned to the issue of whether a provision in the death benefit certificate that attempted to *shorten* the statute of limitations from 5 years to 18 months following the husband's death was valid. 115 Kan.

at 599-600. In reviewing this issue, the court cited a number of authorities from various jurisdictions in which insurance companies attempted to shorten the time in which a beneficiary could assert a claim to recover a death benefit. 115 Kan. at 603-04. The *Hornick* court concluded that "[a]greements in advance to waive statutes of limitation *altogether*, are held void on the grounds that such statutes are for the repose, the peace, and the welfare of society." (Emphasis added.) 115 Kan. at 600-01.

In contrast to *Hornick*, the present case does not involve the collection of insurance benefits, nor does it involve any other type of consumer transaction. Likewise, this case does not involve a situation in which a party is seeking to *shorten* the time in which a party may file a lawsuit or other derogation of the parties' access to the courts. Instead, this case involves a commercial transaction in which the Buehnes borrowed a substantial amount of money from the Bank for business purposes. In consideration for obtaining this commercial loan, the Buehnes voluntarily agreed to the waiver provision, which included waiving the statute of limitations to the extent allowed by law. Thus, we find the facts of *Hornick* to be distinguishable from the circumstances presented in this case.

We also find that *Hornick* does not support the broad proposition that all waivers of the statute of limitations violate public policy. Significantly, the *Hornick* court limited its holding to situations in which advance agreements attempt to "to waive statutes of limitations *altogether*." (Emphasis added.) 115 Kan. at 600. In the present case, the Buehnes agreed to waive the statute of limitations "to the full extent permitted by law" but did not attempt to waive the statute of limitations entirely. The Buehnes still had the right to assert that the waiver was unenforceable on the grounds of illegality, fraud, duress, mistake, or—as they have done in this case—violation of public policy.

In determining whether the waiver provision in the commercial promissory note violates public policy, we start from the premise that the freedom to contract is of

10

"paramount importance" and is "not to be interfered with lightly." *Pfeifer*, 297 Kan. at 551 (citing *Idbeis v. Wichita Surgical Specialists, P.A.*, 279 Kan. 755, 770, 112 P.3d 81 [2005]). Although we recognize that the "freedom to contract" is not absolute, it is a well-settled and well-defined public policy that has been recognized by the Kansas Supreme Court since 1885. See *Kansas Pac. Ry. Co. v. Peavey*, 34 Kan. 472, 478, 8 P. 780 (1885). As a result, "[c]ompetent parties may make contracts on their own terms, provided such contracts are neither illegal nor contrary to public policy, and in the absence of fraud, mistake or duress a party who has entered into such a contract is bound thereby." *Manhattan Buildings, Inc. v. Hurley*, 231 Kan. 20, Syl. ¶ 7, 643 P.2d 87 (1982); see *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 257, 225 P.3d 707 (2010).

In *Pfeifer*, the Kansas Supreme Court found that "[t]he plain language of K.S.A. 60-501 . . . does not preclude parties from entering into contracts shortening the statute of limitations period set out by statute. And nothing implicitly supplies that prohibition." 297 Kan. at 553. The *Pfeifer* case involved a dispute arising out of a contract between an employee and her employer in which our Supreme Court was presented with trying to resolve a conflict between "two long-standing public policy interests"—the freedom to contract and the protection of injured workers against retaliatory discharge for filing a workers compensation claim. 297 Kan. at 548. Although it concluded that an attempt to shorten the statute of limitations for an employee to bring a retaliatory discharge claim against her employer for seeking workers benefits was unenforceable, our Supreme Court found that interference with the freedom to contract should be "limited to the circumstances in which there is a strongly held public policy interest at issue." 297 Kan. at 559.

As the United States Supreme Court has found, an otherwise legal contractual provision between competent parties will only be found to be void if enforcement would violate an "'explicit public policy'" that is "'well defined and dominant, and is to be

11

ascertained "by reference to the laws and legal precedents.'"" *United Paperworkers Intern. Union v. Misco, Inc.*, 484 U.S. 29, 43, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987). In other words, "there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy." *Muschany v. United States*, 324 U.S. 49, 66, 65 S. Ct. 442, 89 L. Ed. 744 (1945). "Without this sense of caution, there would . . . be no limit to the contracts we might find policy reasons to invalidate." *Severn Peanut Co. v. Industrial Fumigant Co.*, 807 F.3d 88, 93 (4th Cir. 2015). Here, we find no strongly held public policy interest to justify the invalidation of the waiver provision of the commercial promissory note.

As noted above, the waiver provision agreed to by the parties in this case does not attempt to shorten the five-year statute of limitations or otherwise attempt to limit a party's access to the courts. Rather, the waiver provision grants the Bank the option to delay filing a lawsuit after a default has been declared instead of rushing to the courthouse to file a foreclosure action. Such a provision could potentially benefit debtors by giving them additional time to work out a compromise or settlement with a lender. Regardless, the Buehnes have not shown—or even alleged—that they were prejudiced by the Bank's delay in instituting legal action against them.

In our research, we have discovered no Kansas cases that have found an agreement to grant a party additional time to file a lawsuit to violate public policy. Moreover, the Buehnes have not cited us to any such cases. On the other hand, we note that at least two Kansas cases have enforced agreements to extend the statute of limitations. In the first case, *Younger v. Younger's Estate*, 198 Kan. 547, 426 P.2d 67 (1967), our Supreme Court enforced a provision extending the statute of limitations in a last will and testament. In the second case, *Barnes v. Gideon*, 224 Kan. 6, 578 P.2d 685 (1978), our Supreme Court enforced an agreement to extend the statute of limitations in a written agreement between potential litigants.

12

We do not find a strongly held public policy interest in Kansas that would override the parties' freedom to contract or to justify the invalidation of the waiver provision in the commercial promissory note signed by the Buehnes in order to obtain a loan from First Security Bank. We are also reluctant to invalidate a contractual provision on public policy grounds where—as in this case—the parties are involved in a commercial transaction in which there are not the same concerns regarding unequal bargaining power that are often present in consumer transactions. Likewise, we are also reluctant to partial out one provision of the commercial promissory note when the law requires that we consider the contractual provisions as a whole rather than in isolation. See *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018). Based on our review of the four corners of the commercial promissory note, we find the terms agreed upon to be reasonable.

As mentioned above, statutes of limitations serve "'the practical purpose of sparing the courts from litigation of stale claims and people from being put to the defense of claims after memories have faded and witnesses have disappeared.'" *KPERS*, 262 Kan. at 676. Here, we do not have such concerns. First, the promissory note was not set to mature until October 28, 2025. As such, we do not find the Bank's claim to be stale, nor have the parties expressed a concern about losing evidence. Second, it is undisputed that the Bank loaned the Buehnes $323,000 and that they have made no payments on either the principal or the interest. Consequently, there is little—if any—risk that fading memories or disappearing witnesses would be a factor in this foreclosure action.

Moreover, the Buehnes have not shown that they were prejudiced by the Bank's delay in instituting foreclosure proceedings. Had the Buehnes been prejudiced, they could have potentially asserted a defense under the equitable doctrine of laches. See *State ex rel. Stovall v. Meneley*, 271 Kan. 355, Syl. ¶ 17, 22 P.3d 124 (2001). However, the Buehnes have not alleged that the doctrine of laches applies. Likewise, they have not alleged that the Bank's delay was for an unreasonable length of time.

13

Under the circumstances presented in this case, we find that the waiver provision in the commercial promissory note does not violate a strongly held public policy interest. Rather, we find that enforcement of the waiver provision in the commercial promissory note promotes the paramount public policy of allowing competent parties to freely contract. As a result, we conclude that the wavier provision in this case is valid and enforceable. Accordingly, based on the plain and unambiguous language of the commercial promissory note, we conclude that the Buehnes voluntarily waived their right to assert the statute of limitations as an affirmative defense in this case. As such, we affirm the judgment of the district court.

Affirmed.